## B. W. BROWN v. E. L. NORMAN.

1. CONTRACT. *Rescision thereof. Restoration of status quo. Case in judgment.*

B. & Co. were doing business as merchants, and in October, 1885, were insolvent. Thereupon B. induced N., a farmer, to buy his interest in the firm, fraudulently representing that such firm was solvent; that its liabilities did not exceed $4000, and its assets were not less than $16,000 N., relying on such representations, conveyed his farm and the personal property thereon (at a valuation of $3100) to B. for such interest, N. assuming liability for the existing debts of the firm. In March, 1886, M., a member of both the old and new firms, asked, on behalf of the creditors of the old firm, and on the ground of the insolvency of that firm, that a receiver be appointed to administer the assets for the benefit of such creditors, which was done. In August, 1886, N. exhibited a bill in chancery, in which he set out, in addition to the above-stated facts, that he only discovered the insolvency of the firm "shortly before" the appointment of the receiver, that the property conveyed by B. could not be restored, since it had been used to satisfy the debts of the old firm, on which B. was liable, and asking that his contract with B. be rescinded, and the deed of conveyance of his farm and other property be cancelled. *Held,* that the complainant is entitled to a rescision, because of the fraud practiced upon him; and it is immaterial that the *status quo* cannot be literally restored, as the thing conveyed by B. was of no value, and at no time after the contract was made could the *status quo* have been exactly restored owing to the act of B. in withdrawing from the firm of B. & Co., in which he could not be reinstated by N. without the co-operation of the other members of that firm.

2. SAME. *Ratification by inaction.*

And the facts in the case above stated do not show a ratification of the contract by inaction on the part of N. He had the right to rely upon the

truth of the representations made by B., and was only required to act when he had discovered the fraud. He was under no duty to investigate the condition of the firm of B. & Co.

3. SAME. *Judicial proceedings affecting same. Effect as to right of rescision.*

Nor did the existence of the proceedings for the appointment of a receiver, above referred to, and the fact that N., being a party thereto, permitted the assets to be administered, without giving notice to B., who was not a party to such proceedings, operate to affirm the contract between N. and B., and to preclude the right of rescision by the former; for the proceeding was not instituted at the instance of N., and as to B, it only had the effect of subjecting his property to the payment of his own debts.

APPEAL from the Chancery Court of Lawrence County.
HON. T. B. GRAHAM, Chancellor.
The case is stated in the opinion of the Court.
*R. H. Thompson*, for the appellant.

1. I could cite a great multitude of authorities in support of the proposition that it is an essential prerequisite to the rescision of a contract, for fraud, that the party seeking the rescision should restore, or tender to restore, whatever consideration was received by him under the contract. In other words he cannot keep the benefits and escape the burdens of his agreements, even if his consent to them was fraudulently obtained. I content myself, however, by calling the court's attention to the following cases:

*Kimball* v. *Cunningham*, 4 Mass., 502; S. C., 3 Am. Dec., 230; *Perley* v. *Balch*, 23 Pick., 283; S. C., 34 Am. Dec., 56; *Conner* v. *Henderson*, 15 Mass., 319; S. C., 8 Am. Dec., 103; *Bassett* v. *Brown*, 105 Mass., 558; *Morse* v. *Brackett*, 98 Mass., 205; Kerr on Fraud, 328, 335; Benjamin on Sales, Section 452, and cases cited; *Pintard* v. *Martin*, 1 Smed. & Marshall's Ch'y, 126; *Ware* v. *Houghton*, 41 Miss., 370.

Appellee cannot hope to escape the consequences of a failure to restore Brown to the one-third interest in the store, stock of goods, choses, etc., by claiming that the consideration which passed to Norman was worthless. That Norman proved unable or unfit to successfully manage the business will not do; or even a pretence that the goods, etc., were of no value to him. They were of market value, the bill concedes, $5000.00.

If it be admitted that the return of that which is entirely worthless is not essential, yet the court must say by which standard this shall be determined. The case of *Perley* v. *Balch*, 23 Pick. 283, already cited, is pertinent here. It decides that a party cannot rescind a contract and yet retain any portion of the consideration. " The only exception," said Moreton, J., " is when the property is entirely worthless *to both parties.*"

2. In the case of *Ware* v. *Houghton, supra,* and of *Jagers* v. *Griffin*, 43 Miss., 134, it is said by our own appellate court, speaking of the general rule, presently to be mentioned, that a rescision of a contract must be sought, if at all, in a reasonable time, that " the 'rule of diligence ought to be more stringent where the means of information are of record in the county." How much more ought diligence to be required where the means of information are in a man's own hands ; on the end of his nose, so to speak ?

Upon the general doctrine, that to entitle a party to rescind a contract on the ground of fraud or false representations by the other party, he must do so immediately upon discovering the fraud or false representations, and if he fails to do so, but goes on with the contract after such discovery, he thereby waives his right to rescind, and cannot be relieved from his contract. See Mr. Freeman's note, 35 Am. Dec., 600, and the authorities cited.

I contend that Norman is to be taken to have had knowledge of the mercantile business purchased by him within a very short time after his purchase; and this on the ground that wilful ignorance is the same as actual knowledge; that whatever is sufficient to put a reasonable man on inquiry is ample to charge him with notice of whatever would be developed by that inquiry if made. It is said in *Hoadley* v. *House*, 32 Vermont, 179; S. C., 76 Am. Dec., 167, that a defrauded party " could not rescind the contract, if at the time of the delivery of the article he could have discovered by the use of ordinary diligence that it was not of the kind he bargained for."

Every body understands that a defrauded party is permitted to rescind a contract and recover what he has parted with under it only upon the idea that his consent to the contract was never

given to the bargain as made; or rather that his consent was obtained thereto by fraud, and that fraud vitiated the consent, and therefore there was no consent.

Now as soon as Norman discovered the fraud the parties stood in this relation: Brown had Norman's property, and Norman had in his hands the property of Brown. Norman could affirm the contract or he could rescind it. If he once elects that is the end of the matter. He cannot both rescind and affirm. If he chooses to rescind the law requires that in the exercise of that right he must do justice to his adversary. He must return his adversaries' property; if on the contrary he exercises acts of ownership over it after he has knowledge of the fraud, he thereby ratifies the trade; for he treats the property received by him as his own, when, if he is to rescind, he must treat it as his adversaries.

Suppose, however, after discovery of the fraud, he allows another person to deal with and treat the property as having in fact and in truth passed by the contract sought to be annulled, and sees that other persons sell the goods and deal with the property as if he was the owner, and all this, for five months, without notifying the adversary, would it not be such conduct as would place the matter beyond the question of rescision?

Without arguing further, I do insist that it is manifest from the bill in this case, that Mr. Norman lay by for the purpose of first ascertaining whether he would be able to realize a profit out of the contract. This suit was an after thought. *Cunningham* v. *Fithian*, 2 Gil. (Ill.), 650.

*A. H. Longino*, for the appellee.

1. It is not indispensible to all cases for a rescision that the injured party shall be placed in *statu quo ;* but in cases where it cannot be done, the party seeking the rescision may be excused from so doing by showing sufficient excuse therefor. *Jarrett* v. *Morton*, 44 Missouri Rep., p. 275 ; *Johnson* v. *Walker*, 25 Arkansas, p. 196; *Ellington* v. *King*, 49 Ill., p. 449.

Again, it has been decided by the Supreme Court of New York, that the injured party is required to restore only what he has received, and has at the time, by force of the contract under his control, and that if the wrong-doer has, by his own acts, so

complicated the case that full restoration cannot be made, he has but himself to blame. See *Hammond* v. *Pennock*, 61 N. Y. Reps. p. 153.

It was impossible for apppellee to restore the residue of the goods unsold after they had been seized and taken from him by the officer, and sold for the appellant's debts. There, I think, is the excuse; nor can it be said in this case that if appellee cannot restore the property received, that he should reinstate appellant out of other means. Because all the goods and assets which he received in the trade have been, under the terms of the contract between them, used in the payment of appellant's debts —in the amount of which he so fraudulently deceived appellee— and by his complication and fraud therein is not entitled to restoration or payment.

Again, I conceive that the law makes a distinction in the rule for the rescision of contracts between those procured by fraud and those of any other character, and that the former class is not governed by the general rule relied on by appellant in this case. That the rule in equity that a party seeking to set aside a contract must place, or offer to place, the opposite party in *statu quo*, is not applicable to a case when a deed has been obtained by fraud and without valid consideration. See *Freeman et al.* v. *Reagan*, 26 Arkansas, 373. Nor is the rule applicable in cases where the wrong-doer by his own action in the perpetration of a fraud renders it impossible for the other party to put him in *statu quo*. *Hammond* v. *Pennock*, 61 New York, p. 145.

2. The appellee did not lose his right to rescission by a want of diligence. Under the facts set up in the bill in this cause I think the point at issue is fully settled by the Supreme Court of New York, in the case of *Baker et al.* v. *Lever et al.* It is said that "where a vendee has been induced to purchase property by means of fraud on the part of the vendor, mere want of diligence in discovering the fraud does not deprive the vendee of his right to rescind because thereof; he owes the fraudulent vendor no duty of active vigilance, and if he acts promptly after *actual discovery* of the fraud, he has a perfect right to rescind. 67 N. Y. Rep., p. 304. See also on this sub-

ject, 47 N. Y. Rep., p. 562; 7 Alb. L. J., p. 137, and 1 Hun., p. 304.

*A. C. McNair*, on the same side.

1. Complainant was under no duty to discover the fraud, but was only required to act within a reasonable time after discovery. If he did nothing to ratify after discovery, and brought this action within a reasonable time, then he is entitled to have the contract induced by fraud rescinded. 2 Schoales & Lefra, 486; *Kern* v. *Burnham*, 28 Ala., 428; Snyder on Vendors, Vol. 1, p. 326; *Doggett* v. *Emerson*, 3 Story, C. C. 700; *Wicks* v. *Smith*, 21 Kan., 412.

2. The rule is that a court of equity will not rescind a contract unless the parties can be put in *statu quo*. But there are many exceptions, as when the property received by the defrauded party is absolutely worthless. *Wicks* v. *Smith*, 21 Kans., 412; *Banks* v. *Peck*, 8 Kans., (Webb.) 664; *Smith* v. *McNair*, 19 Kans., 331; *Pearse* v. *Pettis*, 47 Barb., 285.

Or where the wrong-doer has by his own acts so complicated the case that restoration is impossible. *Masson* v. *Bovet*, 43 Amer. Dec., 651; *Hammond* v. *Pennock*, 61 N. Y., 153; *Guckenheimer* v. *Angevine*, 81 N. Y., 397.

Can Brown, under the facts of this case, defend on the ground that Norman cannot return to him the goods, when the goods have been sold to pay Brown's own debts?

COOPER, C. J., delivered the opinion of the Court.

The appellee exhibited his bill in the Chancery Court of Lawrence county, to cancel a conveyance of certain lands and personalty made by him in October, 1885, to the appellant, on the ground that it was procured by fraud and deceit. The defendant demurred to the bill, and his demurrer being overruled, he appealed.

It appears by the bill that, prior to October, 1885, the appellant was a member of the firm of Mangum, Brown & Butler, doing business in the town of Wesson, in Copiah county. At that time the said firm was insolvent, owing debts to the amount of $12,000, and having assets only to the value of $5000. A day or two before the bargain between appellee and appellant, Brown

and Mangum went from the town of Wesson to the residence of appellee, which was some ten miles in the country, and proposed to him to purchase Brown's interest in said firm, representing to him that the firm was in a solvent and prosperous condition, and that its total liabilities did not exceed $4000, while its assets were not less than $16,000, and exhibited to him false and fraudulent statements which they had prepared for the purpose of deceiving him as to the condition of the firm.    The appellee was a farmer, having no knowledge of mercantile affairs, and believing Brown and Mangum to be honest and truthful men (he having known them for many years), relied upon the representations and bargained for Brown's interest in the firm, giving him in exchange therefor his farm and the personal property thereon (at the valuation of $3100) and paying in cash $500, and made a deed conveying the property to Brown.

In additon to the price paid by appellee, he assumed liability for the existing debts of the firm.    After this contract had been made, the name of the firm was changed to Mangum, Butler & Co., the appellee being the Co.    The new business was carried on until March, 1886, at which time, Mangum, at the instance of the creditors of Mangum, Brown & Butler, exhibited his bill in the chancery court, of Copiah county, for the dissolution of the firm and administration of its assets on the ground of the insolvency of said firm of Mangum, Brown & Butler.    On his petition, a receiver was appointed who took possession of the entire assets and applied them, under the direction of the court, to the payment of the debts of the said firm, there being an insufficient amount to pay the debts in full.    The bill charges that the appellee did not discover the insolvency of the firm of Mangum, Brown & Butler until " shortly before " Mangum instituted his proceedings for dissolution and administration.    The bill in this cause was exhibited in August, 1886, more than five months after the appointment of the receiver in the proceedings instituted by Mangum.

The complainant stated in his bill that by reason of the proceedings by Mangum, and the administration of the firm assets by the Chancery court, he could not offer to restore the defendant to the position he had occupied before the contract was

65 MISS.—25.

made, but that in fact the property had been applied as the rights of the other partners required, and as was contemplated by the contract between the complainant and defendant.

The grounds of demurrer are :

1. That since the *status quo* cannot be restored, a rescission cannot be decreed, but that complainant must resort to an action at law for the deceit practised upon him.

2. That complainant having failed to rescind presently upon the discovery of the fraud ratified and affirmed the contract.

3. That complainant having failed to promptly notify the defendant of the proceedings by Mangum, and by permitting the property to be administered in a suit to which he was a party, affirmed the contract.

4. That complainant having access to the books of the firm and the opportunity of discovering the fraud, was guilty of negligence and laches in not having pursued his inquiries within a short time after the sale, and must be treated as having known of the fraud at the time when by diligence he might have discovered it, and that by remaining in possession after that time he affirmed the contract.

It will be noticed that the objections to the relief asked resolve themselves into two classes: (1.) That there can be no rescission because the *status quo* cannot be restored, and (2.) that the conduct of the complainant, after he knew or should have known of the fraud, is in law a ratification of the contract.

In decisions in actions at law arising from attempted rescissions of contracts for the sale or exchange of personal property, the language of the courts is almost uniform in declaring that the defrauded party, in order to maintain his suit, must have restored or tendered to restore whatever was received by him under the contract, because of the principle that the contract must be rescinded in toto if at all, the plaintiff not being permitted to retain a benefit under an indivisible contract which he repudiates. But even in actions at law there are exceptions to the rule. If the thing received by the defrauded party be of no value, (*Fitz* v. *Bynum*, 55 Cal., 459), or if by reason of the act of the fraudulent party a return be rendered impossible, (*Masson* v. *Bovet*, 1 Denio., 69, 43 Am. Dec.

and Notes; *Hammond* v. *Pennock*, 61 N. Y.; 145), a return or tender is unnecessary.

So, also, where by natural causes or reasonable use the value of the property is diminished, and perhaps where it is necessarily destroyed in discovering the fraud, the fraudulent party must receive it in its depreciated condition. *Baker* v. *Lever*, 67 N. Y., 304; *Gatling* v. *Newell,* 9 Ind. (Tanner), 574.

And, if the *bona fide* buyer has expended work, money or material in the improvement of the property before discovering the fraud, he may restore the property and recover for the work and labor, money or material put upon it. *Farris* v. *Ware*, 60 Me., 482.

In the two latter classes of cases there is a restitution of the thing itself to the fraudulent seller, but the *status quo* is not restored; for in the one case he receives the property back less valuable than it was, and in the other, he takes it improved in value; but possibly improved in a manner or to an extent he would not have desired, but he is nevertheless chargeable with the value of improvement.

In many of the cases for rescission in equity language is used from which it might be inferred that precisely the same principles govern in suits in equity that are applied to determine the right of the party to sue at law. In actions, whether at law or equity, usually both of the questions presented by this record are involved, viz.: whether there had been a restoration of the *status quo*, and whether there has been ratification by the plaintiff after knowledge of the fraud. It is evident that ratification goes to the very root of the controversy, and if that be shown, whether in a court of law or of equity, the plaintiff must fail. It is therefore true that in investigating and determining that question, the rule should be the same in equity as in law. But there is this marked distinction between suits at law for the recovery of the consideration paid, after rescission by plaintiff, and bills in equity for rescission. The plaintiff at law must have the legal title to the thing sued for, if it be a chattel, or a legal right to the sum demanded, at the time of the institution of his suit. If he has parted with his property by reason of the fraud of the buyer, or if, being buyer, he had parted with his money

by reason of the fraud of the seller, the legal title or right has passed out of him and into the other party. The contract is not void, but voidable only, and it must be avoided to re-invest him with his legal title or right to sue. Since the law permits him to re-acquire this legal right, by his own act, it puts upon him the necessity of restitution of the thing received by him as a condition of the exercise of the right to avoid the contract. From necessity, the law knows nothing of compensation, but requires restoration of the thing received, for to permit the plaintiff to determine what would be just compensation would be to make him judge in his own case.

But in equity the complainant does not necessarily rescind and sue; he may sue for rescission. He is required to restore the consideration, not however as a condition of acquiring the right to sue, but because of the equitable maxim that he who seeks equity must do equity. Mr. Pomeroy, thus states the rule: "In administering these remedies, pecuniary as well as equitable, the fundamental theory upon which equity acts is that of restoration, of restoring to the defrauded party primarily, and the fraudulent party as a necessary incident to the positions they occupied before the fraud was committed, assuming that the transaction ought not to have taken place, the court proceeds as though it had not taken place, and returns the parties to that situation. Even in such cases the court applies the maxim, he who seeks equity must do equity, and will thus secure to the wrong-doer, in awarding its relief, whatever is justly and equitably is due." 2 Pom. Eq., Sec. 910.

In *Neblett* v. *McFarland*, 92 U. S., it is said: "The court proceeds on the principle that, as the transaction ought never to have taken place, the parties are to be placed as far as possible in the situation in which they would have stood if there had never been any such transaction."

Other writers upon equity jurisprudence deduce the right of the defendant to have restoration of his property from the maxim of equity that imposes doing equity upon the complainant as a condition upon which he secures relief.

Adams' Equity, 191; Story's Eq. Jur., Sect. 693.

Where the complainant has a plain and adequate remedy at

law, and the condition of the parties has been so radically changed that it is difficult to put the defendant into as good position as before the sale, and the complainant has had substantially the benefits contracted for, the misrepresentation being as to a part only of the subject-matter, for which recovery of damages would be full relief, many cases may be found in which the court of equity has declined to interfere. But an examination of the cases discloses the fact that the most vigorous announcement of the rule, requiring the restoration of the *status quo*, is to be found in *dicta*, or in cases in which there has been ratification after discovery of the fraud.

In *Pintard* v. *Martin*, 1 S. & M. Ch., 126, and *Johnson* v. *Jones*, 13 S. & M., 580, relief was denied upon the ground that the complainants had ratified after knowledge of the fraud. What was said upon the other branch of the case seems to have been uncalled for, and to have been only incidentally remarked. The annotator of Adams' Equity cites, in addition to these cases, the following other decisions. *Garland* v. *Bowling*, Hemg., 710; *Coppedge* v. *Threadgill*, 3 Sneed, 577; *Skinner* v. *White*, 17 John., 357; *Clay* v. *Turner*, 3 Bibb.

(It is curious to note how far they fall below supporting the proposition they are cited to sustain).

In *Garland* v. *Bowling*, the court held, first, that the evidence failed to support the allegation of fraud, and, therefore, the complainant could not recover; but it also appeared that the complainant did not seek to rescind the contract. What he attempted to do was to enjoin a judgment at law recovered for the price of the property sold (slaves), and to retain the slaves. *Coppedge* v. *Threadgill* was a case in which a sale of land was set aside; but the court had neglected to require the complainant, a married woman, to restore the cash she had received. The Supreme Court held that her coverture did not relieve her of the obligation to refund, and reversed the cause, that a decree might be entered to that effect. *Skinner* v. *White*, 17 Johns., was a case in which there had been a rescission by the act of both parties, and the only question was as to the extent of the liability of one of the parties to the contract. In *Clay* v. *Turner*, 3 Bibb., the court refused either to specifically enforce a contract

at the suit of one of the parties, or to rescind it at the suit of the other. On the subject of rescission, the court said that the matter complained of was not material under the terms of the contract; and, besides, that the complainant had speculated upon the chances of getting a paying bargain through a series of years, and sought relief, not because of the want of capacity in the other party to convey, but because he found, after a long time, it would be better to rescind. A review of these cases illustrates how unreliable the work of the average annotator is often found to be.

Let us now refer to cases in which the specific question has been raised and passed on by courts of equity.

In *Barker* v. *Walters*, 8 Beav., 92, and *Jervis* v. *Berridge*, Lr., 8 Ch. Appeal Cases, demurrers had been interposed to bills seeking rescission, on the ground that no offer was made to restore the *status quo*. It was held that it was unnecessary to do so, since the court, on final hearing, would require the complainant to do equity. In the latter case, Lord Selborne said: "Upon principle there appears to be no good reason why a plaintiff in equity, suing upon equitable grounds, should be required, on the face of his bill, to submit to those terms which the court at the hearing may think it right to impose as the price of any relief to which he may be entitled."

In *Savery* v. *King*, 5 House of Lords, 627, the party seeking rescission had disposed of the part of the property received by him (a policy of insurance), and on this branch of the case Lord Cranorth said: " The one remaining question is as to the terms on which relief ought to be given. With respect to the mortgage it is plain that Richard must, as far as possible, put Savery in the condition in which he must have been if no such mortgage had been made, and if his security had rested solely on the life of his father, and the several policies of insurance. One of the eleven polices of insurance was sold by Richard in January, 1846 ; it is impossible therefore as to that policy to restore Mr. Savery exactly to the position in which he stood in 1835 ; but he cannot be heard to complain of this, for by the arrangement he had made or concurred in, he had led Richard to suppose that all the polices had become his own, and that he

might deal with them as he thought fit; indeed he, himself, suggested a sale of one or more of them as a step which it might be advisable for Richard to take. All, therefore, which can be done, as to the policy which was sold, is to charge Richard in account with Mr. Savery with the sum which it produced, together with interest from the time when it was sold."

In *Warner* v. *Daniels*, 1 Woodb. & M., the court directed in decreeing a rescission that the complanant should re-deliver to the defendant the property received (certain shares in an incorporated company), but that if it should appear that he had disposed of any of the shares then that he should restore the value thereof with interest.

In *Myrick* v. *Jacks*, 33 Ark., 425, the court said: " It is no objection that complainant cannot put Jacks entirely in *statu quo* on rescission. The change in condition of the property was brought about by persuasi n to accomplish a transaction in which Jacks was a party, and before the fraud was discovered, and by the action of complainant in a matter she did not understand. When courts cannot place parties wholly in *statu quo*, they are not thereby precluded from granting relief against fraud. They may proceed to do so as nearly as possible, and make compensation." See, also, *Gatling* v. *Newell*, 9 Ind., 574 ; *Crosland* v. *Hall*, 33 N. J. Eq., 111.

In *Ogden* v. *Thornton*, 30 N. J. Eq., 573, the court finding itself unable to rescind the contract because the fraud occurred after the conveyance remanded the cause in order that the bill might be amended, so as to enforce a lien upon the property for the price at which it had been valued ; the defendant by his fraud having prevented the complainant from receiving what he contracted she should have.

Upon principal and authority we think it immaterial that the *status quo* cannot be literally restored. The defendant by the grossest fraud seduced complainant to exchange his farm for mere moonshine. What he professed to give was in fact of no value to himself or to any one else ; he simply placed complainant in a position to be rendered insolvent ; for by his purchase he secured nothing, except what should remain of the partnership assets after payment of debts, and the firm

being hoplessly insolvent this right was of no value. It may also be noted that from the very moment of the execution of the contract it was impossible for the defendant to be placed in *statu quo*, either by the act of complainant, or by both his act and the consent of the defendant. The defendant had been a member of a partnership, and his act in selling his interest therein was a dissolution of the firm ; he could not again become a member without the assent of Mangum and Butler, over whom neither the defendant nor complainant had control. By his own act therefrom a restoration of the *statu quo* was made impossible.

Nor do we think the record discloses ratification by inaction.

The complainant owed the defendant no duty to investigate the condition of the firm ; he had the right to rely upon the truth of the representations made by the defendant, and all that was required was that he should act when he discovered the fraud of which he was the victim.

In *Rawlins* v. *Wickham*, 3 De. G. & Jones, 304, the complainant had been inveigled into an insolvent come partnership by false representations of its condition, and acted as a partner for five years, and then having discovered the fraud exhibited his bill for rescission and for an account, and his right to rescind was upheld. See, also, *Smith* v. *Smith*, 30 Vt., 139, which was an action at law, successfully defended by the party defrauded, founded on facts strikingly similar to those involved here. It is held both at law and in equity that delay alone, before the discovery of the fraud, will not bar the right to rescind.

Notes to *Bryant* v. *Isburgh*, 74 Am. Dec., 655.

The dissolution of the new firm of Mangum, Butler & Co., by the appointment of a receiver in a suit to which the defendant was not a party does not, we think, preclude complainant of his right to rescind. It was not at his instance that the proceeding was instituted, and at last it is but the subjecting of defendant's property for the payment of his own debts.

*The demurrer was properly overruled and the decree is affirmed.*