of an agreement for repairs by the landlord, made before or contemporaneously with the written lease, is inadmissible. Daly v. Piza, 105 App. Div. 496, 94 N. Y. Supp. 154 (First Department); Van Derhoef v. Hartmann, 63 App. Div. 419, 71 N. Y. Supp. 552 (Second Department); Wilson v. Deen, 74 N. Y. 531. Any agreement made after the lease was signed to the effect now claimed is without consideration. Leeming v. Duryea, 49 Misc. Rep. 240, 97 N. Y. Supp. 355. The plaintiff testified that after the lease was signed he did agree to make some repairs, and did make them. He stated that the tenant informed him on the 15th day of May that he did not intend moving in before Decoration Day, and asked that some of the rooms be painted, and that the defendant told him that he would paint some of the rooms for him. There is no claim that this was not done, but rather that it delayed the tenant's possession. On the return day the tenant paid into court the sum of $79.50. At the conclusion of the trial the court found that $87.50 was due, after allowing an abatement of the rent on account of the delay in getting possession. The tenant paid the $8 into court.

The final order should be reversed, and a new trial ordered; costs to abide the event. All concur.

___

## McNAUGHT et al. v. EQUITABLE LIFE ASSUR. SOCIETY OF UNITED STATES.

(Supreme Court, Appellate Division, Second Department.   March 4, 1910.)

1. FRAUD (§ 31*)—REMEDIES.

A party induced by fraud to enter into a contract may either stand on it and sue for damages or may rescind it.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 27; Dec. Dig. § 31.*]

2. CONTRACTS (§ 274*)—RESCISSION—MODE.

A party who elects to rescind a contract induced by fraud may make the rescission by his own act, and on his rescission he may recover all that he has parted with under the contract, provided he has restored to the adverse party all that he has received, or he may go into equity and ask for a rescission and offer in his complaint to restore all that he has received.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1202–1206; Dec. Dig. § 274.*]

3. CONTRACTS (§ 97*)—RESCISSION—GROUNDS—FRAUD—AFFIRMANCE.

A party cannot rescind a contract either at law or in equity on the ground of fraud when after knowledge of the fraud he affirms it.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 442, 443; Dec. Dig. § 97.*]

4. CANCELLATION OF INSTRUMENTS (§ 60*)—JUDGMENT—OPERATION.

A judgment rescinding a contract takes effect as of the time of the bringing of the action, and plaintiff is not considered as bound under the contract in the meantime.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. § 129; Dec. Dig. § 60.*]

___

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

.5. CANCELLATION OF INSTRUMENTS (§ 1*)—REMEDIES.

  The distinction between an action at law on the rescission of a contract and a suit in equity for a rescission does not exist in the substantive principles underlying either form of action, but in the difference in the application of the rule as to the necessity of a restoration of the status quo by the party electing to rescind.

  [Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. § 1; Dec. Dig. § 1.*]

'6. INSURANCE (§ 142*)—FRAUD—AFFIRMANCE.

  Where, after the service of a summons in a suit in equity by insured to rescind for fraud a life policy stipulating for the forfeiture of premiums paid on the nonpayment of a premium at maturity and before the service of the complaint, insured paid a premium then due without any mutual understanding that it should not serve as an affirmance of the policy, the payment operated as an affirmance, though insured notified insurer that the fact of payment should not have the legal effect of an affirmance.

  [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 263; Dec. Dig. § 142.*]

'7. CONTRACTS (§ 274*)—RESCISSION—EFFECT.

  While an election to rescind a contract on the ground of fraud may be irrevocable against the elector where the adverse party accepts the rescission, yet, where the right to rescind is disputed, there may be a subsequent affirmance by the party electing to rescind.

  [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1202–1204; Dec. Dig. § 274.*]

Appeal from Special Term, Westchester County.

Action by James McNaught and another against the Equitable Life Assurance Society of the United States. From an interlocutory judgment overruling a demurrer to the complaint, defendant appeals. Reversed, and demurrer sustained, with leave to amend.

Argued before JENKS, BURR, THOMAS, RICH, and CARR, JJ.

William Carrell Diamond (Allan McCulloh, on the brief), for appellant.

Charles D. Millard, for respondents.

CARR, J. This is an appeal from an interlocutory judgment overruling a demurrer to the plaintiffs' complaint. The demurrer was based upon the ground that on the face thereof the complaint did not state facts sufficient to constitute a cause of action. The cause of action attempted to be stated in the complaint is in equity for a rescission of a policy of life insurance on the ground that the plaintiffs were induced to enter into the contract by certain false and fraudulent representations made by the defendant, knowingly, with the intent to deceive the plaintiffs, and relied upon by the plaintiffs in their acceptance of the policy. It appears that this action was begun by the service of a summons only, and that some little time elapsed between the service of the summons and that of the complaint. The complaint, in addition to the general allegations as to the alleged fraud, set forth that the plaintiffs on discovering the fraud tendered back the policy to the defendant for cancellation, and demanded the return of the premiums already paid upon it, and that the defendant refused to cancel the

policy and return the premiums.   It then sets forth an allegation as follows:

"(15) That in and by said policy of insurance it is provided that, if any premium thereon be not paid on the date in said policy designated, all the premiums theretofore paid on said policy shall be and become forfeited.   On account of such provision and the refusal of the defendant to furnish the information as hereinbefore stated, plaintiffs on December 21, 1908, paid to defendant the sum of $807.85 on account of said premium, being the amount then due, and plaintiffs then and there notified said defendant that said payment was made without prejudice to the rights of the plaintiffs in the premises and reserving all the legal and equitable rights of the said plaintiffs to rescind and cancel the said policy and prosecute this suit."

As appears by the record, this action was begun by the service of a summons on December 10, 1908.   The demurrer is sought to be sustained on the ground that the allegations of the complaint do not show that the alleged fraudulent representations were made as to material facts, and on the further ground that it appears on the face of the complaint that the plaintiff with full knowledge of the alleged fraud ratified the policy of insurance by paying a premium thereon 11 days after bringing the action   We shall consider this later ground first in order, for, if it is well founded, it is conclusive upon the plaintiffs.

It is well-settled law that when one discovers that he has been induced to enter into a contract by fraud he may take either of two grounds:  He may stand upon the contract and sue for such damages as he suffered from the fraud, or he may elect to rescind the contract. If he determines upon a rescission, he may make it by his own act, and upon his rescission he may recover back all that he has parted with under the contract, provided that he has restored to the other party all that he had received; or he may go into a court of equity and ask for a rescission and offer by his complaint to restore all that he has received.   Gould v. Cayuga County Nat. Bank, 86 N. Y. 75; Vail v. Reynolds, 118 N. Y. 297, 23 N. E. 301; Pryor v. Foster, 130 N. Y. 171, 29 N. E. 123.   In neither case can he rescind himself nor ask for a rescission in equity, if, after knowledge of the fraud, he affirms the contract by accepting a benefit under it.   If he elects to rescind himself or seek rescission in equity, the rescission must be as to the whole contract and not merely as to a part.

The appellant contends, therefore, that the plaintiffs by paying a premium on the policy on December 11, 1908, ratified it and took steps to keep it in force, and thereby accepted a benefit under it, by prolonging the period of insurance during the time covered by the premium.   It is true that the plaintiffs' allegation as to this payment declares that the payment was made without prejudice to their rights at law or in equity; but there is no allegation that the payment was received by the defendant as a conditional one.   The legal effect of the payment is determined by legal rules and not by one-sided declarations or understanding.   It is urged, however, that in an equitable action for a rescission the contract sought to be rescinded is deemed to be in full force until the entry of the judgment or decree granting the rescission, and that, if this be so, then the plaintiffs, having elected to rescind, were yet obliged to keep on paying their premiums during the

pendency of the action, in order to avoid the forfeiture clause of the policy, as otherwise, in case of nonpayment of the current premiums, the policy would end, to the complete disadvantage of the plaintiffs, and there would be nothing for a judgment decreeing rescission to act upon. If, in this case, after the plaintiffs elected to rescind by bringing the action, the policy yet continued alive as to them, it was, of course, their obligation to pay the current premiums. This obligation was founded, however, upon the express conditions of the policy itself. If they had the right to rescind, then the forfeiture clause of the policy fell with the whole contract. After a rescission, no obligation under the contract survived against the plaintiffs. It is said by some text-writers that in an equitable action for rescission the "judicial rescission when obtained relates back to the date of the commencement of the proceedings." Wald's Pollock on Contracts (3d Ed.) p. 710. This does not mean that until the judgment is obtained the contract is to be deemed as still in force, but means, on the contrary, that, if a judgment of rescission be obtained, it takes effect as of the time of the bringing of the action, and the plaintiff is not considered as bound under the contract in the meantime.

In Reese River Silver Mining Co. v. Smith, L. R. 4 H. of L. 64, a case arose as follows: One who had been induced to subscribe for certain shares of stock in a mining company elected to rescind on discovering fraud in the prospectus by which he was induced to subscribe. He made demand for the cancellation of his shares and the return of the amount of his subscription. This being refused, he brought an action in equity for a rescission of his contract. In the meantime, and before he obtained judgment, the company went into liquidation under an order of the court. The liquidators sought to hold the subscriber as a stockholder, under the claim that until a judgment was obtained in the action for a rescission he still remained a stockholder. This claim was rejected on the ground that the actual rescission happened, not when the judgment was obtained in the action for a rescission, but when the election to rescind was made known by the filing of a bill in equity, or even earlier, when the demand for restoration was made, and that after the filing of the bill the contract relations between the parties was at an end, provided the right to rescind existed in the first instance.

In Cobb v. Hatfield, 46 N. Y. 533, the action was brought at law on a rescission and not in equity for a rescission. There a subscriber to stock of a corporation elected to rescind on the ground of fraud. At the time he brought his action, he had not received the certificate of stock. While the action was pending, he accepted the certificate, and it was held that the acceptance constituted such a ratification of the contract as would defeat the action. In this state, and in many other jurisdictions, there is a well-recognized distinction between actions at law on a rescission and those in equity for a rescission. Gould v. Cayuga County National Bank, supra; Brown v. Norman, 65 Miss. 369, 4 South. 293, 7 Am. St. Rep. 663; 2 Pomeroy's Equitable Remedies, § 688. This distinction, however, does not exist in the substantive principles which underlie either form of remedy, but is to be

found rather in a difference in the application of the rule as to the necessity of a restoration of the status quo ante on the part of him who elects to rescind.   If the action be brought at law upon a rescission, the plaintiff must have tendered restoration before bringing the action.   If it be brought in equity for a rescission, then it is sufficient if the tender be made in the complaint itself by an offer to restore. Whether the action be at law or in equity, the rule as to ratification or affirmance is the same.

In the case at bar, the effect of the payment of the premium after the discovery of the alleged fraud was not simply and directly to prevent a forfeiture of all payments previously paid.   It did accomplish this result, it is true; but the primary result was to continue the insurance in force, and the prevention of a forfeiture of past-paid premiums was but incidental to the continuance of the policy.

As the respondents state very frankly in their brief on this appeal, if the insured should die during the pendency of this action, and while the current premiums were being paid, the defendant would continue liable to the beneficiary of the policy for the full amount of the insurance, notwithstanding the plaintiffs' election to rescind.   In the same breath, they declare that, if a judgment for a rescission be obtained before the death of the insured, then they are entitled to recover back not only all premiums paid before the bringing of the action, but those paid after it.   If this can be so, then a novel situation, indeed, exists, and one which is unsupported either by precedent or reason.   The equitable action for a rescission cannot be considered as a speculation.   And if it could be, it should not be assimilated to the tossing of a coin on the principle of: "Heads, I win; tails, you lose." As was said in Genet v. Delaware & Hudson C. Co., 28 App. Div. 328, 333, 51 N. Y. Supp. 377, 379:

"It has been suggested that this is an action upon the part of the plaintiff asking the judgment of the court that she be permitted to rescind, and that, as she could not know what the judgment of the court was going to be upon that question, she was entitled to receive the benefits of the contract until it might be ascertained whether she had been able to establish her right to rescind or not, because the court could not permit her to rescind unless the right to rescind upon her part existed.   It is clear that the plaintiff is not a ward of the court; she had to act for herself, and she is to determine for herself whether or not she has a right to rescind; and, after she has exercised that right as far as she is able to do it she may undoubtedly come into court to have that action established by the judgment of the court; but the judgment relates back to the rescission and has its foundation thereon."

In that case, the plaintiff had given a receipt for each payment under the contract, in which it was stated that the payment was received "without waiver or prejudice."   The Appellate Division thought these words meaningless under the circumstances, and the Court of Appeals in a later appeal (170 N. Y. 278, 63 N. E. 350), without deciding the question, expressed its opinion that they might be considered as evidence of a mutual understanding between the parties that the receipt of the payments was not to be considered as a ratification of the contract.   Without such mutual understanding, however, there could be no question as to the subsequent ratification by receiving benefits under

the contract. It seems elementary enough that a contract cannot be both rescinded and affirmed at the same time.

In the case at bar, as above indicated, there is no allegation that the payment of the premium made by the plaintiffs between the service of the summons and that of the complaint was accepted by the defendant on the mutual understanding that it should not serve as an affirmance of the policy. At most, it is but alleged that, when the plaintiffs made the payment, they notified the defendant that they did not intend that the fact of payment should have the legal effect of an affirmance. This is not enough, for every act must have its ordinary legal effect, unless there is a mutual agreement to the contrary. It is urged, however, by the respondents, that, by the service of the summons, they elected to rescind, and the election once made was irrevocable, and that therefore no subsequent act of theirs can be deemed an affirmance of the contract, as otherwise it would be in contradiction of an irrevocable election to rescind. It is true enough that an election to rescind may be irrevocable against the elector, if the other party accepts the rescission, for then the contract is clearly waived by mutual agreement. If, however, the right to rescind is disputed, there is nothing to prevent a subsequent affirmance if the other party be willing. Cobb v. Hatfield, ut supra.

If, however, with full knowledge of the alleged fraud, there should be an affirmance of the contract, there is no longer room for a subsequent rescission. Baird v. Mayor, etc., 96 N. Y. 567; Schiffer v. Dietz, 83 N. Y. 300; Myers v. King, 48 Hun, 106; Barr v. N. Y., L. E. & W. R. R. Co., 125 N. Y. 263, 26 N. E. 145.

If the foregoing views be correct, then on the face of the complaint it appears that the plaintiffs have affirmed the contract of insurance after acquiring full knowledge of the alleged fraud, and there is stated therein no cause of action at law nor in equity.

The interlocutory judgment overruling the demurrer should be reversed, with costs and disbursements of this appeal, and the demurrer to the complaint sustained, with leave to the plaintiffs to serve an amended complaint on payment of $30 costs. All concur.