HANNAH JEANETTE THOMPSON, Respondent, *v.* ROBERT H. THOMPSON, Appellant.*

First Department, May 29, 1931.

---

* Revg. 134 Misc. 614.

*John Burlinson Coleman* of counsel [*Brush & Crawford*, attorneys], for the appellant.

*George Gordon Battle* of counsel [*James C. Goggin* with him on the brief; *Battle, Levy, Van Tine & Fowler*, attorneys], for the respondent.

MARTIN, J. In this action the prayer for judgment demands the cancellation of both a contract and a release of dower executed by the plaintiff, and the return of 900 shares of the stock of Thompson & Norris Company, which company was dissolved after the action was commenced.

The court at Special Term rendered a money judgment against the defendant for the difference between the amount which the court found to be the fair market value of 900 shares of Thompson & Norris Company stock sold by the plaintiff to the defendant under the terms of the contract, and the price paid by the defendant to the plaintiff for such stock.

The complaint alleges that the parties hereto were married on October 23, 1913; that the plaintiff was the owner of 900 shares of stock of Thompson & Norris Company, a New Jersey corporation; that the defendant was an officer and director of that company; that he had full knowledge of the worth and value of its stock, and had access to the books, accounts and financial statements of the company; that the plaintiff did not have any knowledge or information of such value, and did not have access to such books and financial statements; that defendant falsely and fraudulently represented to plaintiff that the stock was of the value of not more than $75 a share, and that her dower interest in real estate owned by the defendant was of the value of not more than $6,000, whereas the stock had a value of not less than $125 a share, and her dower a value of not less than $15,000; that such representations were made by the defendant knowing them to be untrue and with intent to deceive and mislead the plaintiff, and with the intent

to induce her to forbear making inquiries as to the value of the stock and the value of her dower rights; and that she was induced thereby to execute the agreement and transfer the stock and deliver the release of dower.

It is also set forth that by reason of the relations between the parties and the trust and confidence of the plaintiff in the defendant, her then husband, and by reason of her trust and confidence in his superior knowledge as to the value of the said stock and as to the value of the said dower rights, plaintiff was induced to and did rely upon the said representations and was thereby induced to and did forbear making any inquiries as to the value of the said stock and dower rights except as to the information furnished by plaintiff.

It was admitted that the plaintiff received from the defendant $83,000, which sum she offers to return, with interest, upon the return to her of the 900 shares of stock and the release of dower. The plaintiff says she has no adequate remedy at law. The complaint demands judgment solely that the contract be canceled, the stock returned to her and the release of dower be declared void.

Evidence was produced upon the trial to the effect that in 1914, about a year after the parties hereto were married, the defendant husband made generous gifts to the plaintiff wife, including premises 1904 Foster avenue, in the borough of Brooklyn, city of New York, and certain furniture and stock, among which stock were 225 shares of Thompson & Norris Company, 160 first preferred United States Rubber, 25 preferred American Car and Foundry, 20 P. C. C. & St. L., 25 Western Union and 52 Southern Pacific. In consideration of these gifts the plaintiff executed and published her will wherein she devised to the defendant the premises above mentioned and bequeathed to him all the household furniture, all chattels of which she might be the owner at the time of her death, except jewelry and wearing apparel, and all the said stock, and in case they should be sold, the proceeds thereof, or the securities in which such proceeds should have been invested. The defendant was appointed sole executor. Simultaneously with the execution of the will the plaintiff entered into a contract with the defendant whereby she agreed not to revoke said will, which contract contains the recital that the gifts were made upon the understanding that she would immediately execute and publish a will wherein she should devise and bequeath to the defendant all the property aforesaid.

Thereafter the defendant made further gifts to plaintiff of bonds of the Edison Portland Cement Company, which she sold for $67,000, sixty-one shares of Maltine Manufacturing Company of

London, nineteen shares Cosmopolitan Land Company, fifty shares Shinnecock Bay Realty Company, thirty shares G. W. Hornich Company, and twenty-five shares of Emerson & Norris Company, on which last-mentioned stock in one year she received dividends amounting to $1,900. After making these gifts the defendant had left only two hundred and twenty-five shares of Thompson & Norris Company, twenty shares of the Thompson & Norris Company of Canada, a one-eighth interest in a ranch in California, which interest he afterwards sold for between $11,000 and $12,000, and a one-eighth interest in real estate in New York having an aggregate value of about $60,000.

The Thompson & Norris Company thereafter declared a stock dividend and the plaintiff, as the holder of record of 225 shares, received an additional 675 shares, making 900 shares of that company standing in her name, but in which, under her contract and will, the defendant had an equitable interest. The defendant claimed that the gift of Thompson & Norris Company stock was made upon the express promise of the plaintiff that she would give him an irrevocable power of attorney to vote the stock; but the plaintiff, upon advice of counsel, refused to do so.

In November, 1925, the plaintiff decided to get a divorce and retained counsel to arrange a financial settlement, stating that she was worried for fear the Thompson & Norris Company might pass its dividend. Her attorney called up the attorney for the defendant to arrange a conference. After negotiations had been carried on for some time the plaintiff's attorney proposed that the defendant buy the Thompson & Norris Company stock and was told *that as the plaintiff had been given nearly everything* defendant owned he was without means to buy the stock. The matter was then presented to an uncle of the defendant, and various conferences were held between the attorneys for the purpose of fixing a price. These conferences were without result, but the defendant's attorney wrote plaintiff's attorney under date of February 24, 1926, as follows: " In reply to yours of the 18th instant I beg to say that the stockholder with whom I have been negotiating for the purchase of the 900 shares of stock of the Thompson & Norris Company will not pay $88,250 for the same. * * *

" The only offer I can submit, therefore, is to pay $80,000.00 for the stock and to allow Mrs. Thompson $5,000.00 additional in lieu of alimony. If Mrs. Thompson prefers to keep the stock, I will agree to an allowance of $10,000.00 in lieu of alimony, all contracts between the parties to be canceled and she to release her inchoate right of dower. These are the best terms I can concede, and I cannot entertain any counter-offer."

Upon the receipt of this letter the plaintiff's attorney showed it to plaintiff and informed her that this was an alternative proposition and that she could either take the $85,000 for the stock or she could keep the stock and get $10,000; he also told her she need not sell the stock if she did not wish to do so. She said she would think the matter over. Two or three days later she told him that she had made up her mind to take the $85,000 but again asked him to see if he could not get more for the stock. He told her that was the best he could do. She instructed her attorney to prepare an agreement which was submitted to defendant's attorney. The contract which was in the form of an escrow agreement, provided that the plaintiff should deposit with the depository, a certificate for 900 shares of the Thompson & Norris Company's stock and release of dower, and that the defendant should deposit the sum of $83,000 in cash; that upon the production of a valid decree of divorce, granted to the plaintiff by any court of competent jurisdiction, which should contain no allowance for the support and maintenance of the plaintiff and no provision for costs or counsel fees, the depository should pay over the $83,000 with the interest thereon, to the plaintiff and deliver the certificate of stock and release of dower to the defendant.

On March 17, 1926, the transaction was closed by the deposit of the money, certificates and releases of dower in escrow. The uncle of the defendant deposited $71,000 and the defendant $12,000. At the same time the defendant deposited the further sum of $2,000 with the direction that it be paid to the plaintiff's attorney when the matter was closed. On December 3, 1926, the attorneys for the respective parties delivered to the depository a consent that the depository pay to the plaintiff the sum of $83,000 with the accumulated interest thereon, and deliver to defendant, or his nominee, the certificates of stock and the releases of dower. The certificates were then delivered to the attorney, who represented both the defendant and his uncle, and were sent to the office of the Thompson & Norris Company and new certificates were issued as follows: A certificate for 800 shares to the defendant's uncle and a certificate for 100 shares to the defendant.

As already pointed out, the plaintiff contended that the representations were made by the defendant, and that because he was her husband and an officer and director of the company she had relied upon him. Plaintiff did not attempt, as a part of her own case, to prove any representations made by defendant personally, but testified to representations which she said had been made by the attorney on March fifteenth and March seventeenth, the first

of which was after the negotiations were complete, and when nothing remained to be done, except for the lawyers to prepare the formal written evidence of the contract; and the second of which was on the day the contract was signed by plaintiff, and after it had been signed by the defendant. The complaint sets forth not only that the representations were made by the husband, but were particularly harmful because of his knowledge of the facts.

Although this action is in equity for rescission, and was tried on that theory, the court, instead of rescinding the contract and restoring the *status quo*, has affirmed the contract and rendered a money judgment in favor of the plaintiff for the difference between $80,000 and $112,500, which last amount the court found to be the value of the 900 shares of stock.

The gravamen of the complaint is fraud, for the allegations are that the defendant was an officer and director of the Thompson & Norris Company; that he had access to the books, accounts, etc.; that he had full knowledge of the worth and value of the stock; that he represented to plaintiff that the stock was worth not more than seventy-five dollars per share, and that she relied upon that statement. It is true that the courts have frequently held that where there is such overmastering influence on one side, or such weakness on the other side, that unfair advantage is rendered probable, the person in whom the confidence is reposed has the burden of showing that all was fair, open and well understood.

That doctrine does not apply in this case, for the plaintiff was represented by counsel and received legal advice in all her transactions with the defendant and was anxious to sell the stock for the amount received.

We agree with the appellant that the respondent has wholly failed to establish a cause of action for rescission; that instead of proving the representations alleged in the complaint, the plaintiff disproved them, and that if fraud had been proved the court could not, in an action for rescission, affirm the contract, thus approving of the sale, and permit the plaintiff to retain the benefits of the contract and also recover damages for the fraud.

We are also of the opinion that this judgment is against the weight of the credible evidence. There is no testimony except that of the plaintiff on the main issue and that is contradicted by the testimony of the defendant and the lawyers for both the plaintiff and defendant, and is not sufficient to warrant a finding in favor of the plaintiff.

It would serve no useful purpose to set forth at length the evidence of plaintiff upon which this judgment was granted, or to detail that

of the plaintiff's attorney who represented her in the negotiations leading up to the making of the contract. The respondent attempts to sustain the judgment by citing authorities which hold that if it is impossible to put the parties in *status quo*, a money judgment may be given. That is true, where the agreement is rescinded and it is shown that a rescission will not accomplish a result which is just and equitable.

In this case a money judgment has been given despite the fact that the agreement under which the stock was sold for $83,000 has been confirmed and is in full force and effect. Although the sale is apparently confirmed, it was evidently considered fraudulent.

In *Merry Realty Co.* v. *Shamokin & Hollis R. E. Co.* (230 N. Y. 316), where the action was brought to foreclose a mortgage, the defendant pleaded a counterclaim and asked for a rescission upon the ground of fraudulent representations. A money judgment was given for $12,000 damages against the plaintiff for fraud and deceit. The judgment was affirmed by the Appellate Division (186 App. Div. 538), but upon appeal the Court of Appeals reversed and in its opinion said: " Rescission and an action for damages are inconsistent remedies and cannot coexist, as one rests upon the avoidance of the contract and the other upon its affirmance. \* \* \*

" If rescission is the remedy selected it must be in whole and not in part. If there be an affirmance it must be of all the terms and conditions of the transaction. (*Hayward* v. *Wemple*, 152 App. Div. 195, 198; *McNaught* v. *Equitable Life Assurance Soc. of U. S.*, 136 App. Div. 774; *Gatling* v. *Newell*, 9 Ind. 572.)

" The defendant had elected to rescind before this action was brought."

There is another important feature of this case. If this agreement of March seventeenth is to be set aside, then the agreements that were canceled and annulled therein should be reinstated. One agreement was by the wife to make a will, leaving everything to the husband.

To meet the situation growing out of the absence of proper findings of fact the attorney asks for a finding of fact to the effect that Thompson & Norris Company of New Jersey had been dissolved and there was no value to the stock; the company having been liquidated and there being no means of obtaining any value for the stock at the present time, that, therefore, the plaintiff is entitled to cash. We are also requested to find that plaintiff having obtained her divorce as agreed and the defendant having remarried, plaintiff cannot be put in *status quo* especially in view of the fact that she accepted a decree of divorce without any pro-

vision for alimony or support, which decree of divorce must remain in force and effect; that by virtue of this divorce decree the defendant remarried; therefore, the *status quo* of the respondent and the appellant cannot be restored by rescinding the contract of March 17, 1926; that, therefore, the court has power to render a judgment for money damages in lieu thereof.

We have already pointed out that the contract which this action is brought to rescind has not been rescinded; that it is still in full force and effect and nevertheless a money judgment has been granted on findings of fact that do not warrant a money judgment and do not warrant any such relief as that given in this case and granted upon evidence which failed to prove the misrepresentations set forth in the complaint.

The judgment should be reversed and a new trial ordered.

McAvoy, O'Malley and Townley, JJ., concur.

Judgment reversed and a new trial ordered.