# TOM RASE v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

July 12, 1912.

Nos. 17,551—(164).

**Vacating stipulation obtained by fraud — condition.**

Where, in a suit brought to set aside a stipulation dismissing on the merits an action brought to recover damages for personal injuries through the defendant's alleged negligence, the court finds that said stipulation was procured from plaintiff by the defendant's fraud and deceit, and that plaintiff was overreached and by misrepresentation induced to accept an inadequate sum in settlement and dismissal of said personal injury action, the stipulation was properly set aside, but *held* that the findings and evidence showing that plaintiff, as a result of the deception and before knowledge thereof, had spent a large part of the amount received in the settlement, it was error for the court to require plaintiff to restore more than he had the ability to do before the trial of the personal injury action.

**Same.**

Under the findings and evidence in this case, *held,* that substantial justice may be done by requiring plaintiff to restore to the defendant before the trial of the personal injury action such an amount only of that received upon the settlement as he is able, and providing that the balance thereof be applied in reduction of the verdict or judgment which may be rendered in such action.

**Review of nonappealable order.**

A nonappealable order, made after trial and before the entry of judgment, can be reviewed only upon an appeal from the judgment, where no motion for a new trial has been made; hence, so long as the judgment may be questioned on appeal, the correctness of such order may also be attacked.

After the former appeal reported in 116 Minn. 414, 133 N. W. 986, plaintiff moved for an order dismissing the action on the merits upon the ground that he had not complied with the conditions of the order requiring plaintiff to pay defendant money. The motion was granted and the clerk of court was directed to enter judgment of dis-

[1] Reported in 137 N. W. 176.

missal upon the merits, Olin B. Lewis, J. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Reversed and remanded.

*W. E. Dampier, J. W. Pinch, L. J. Dobner, J. A. Peterson,* and
*Larrabee & Davies,* for appellant.

*A. H. Bright, M. D. Munn,* and *John D. Erdall,* for respondent.

HOLT, J.

This is an appeal by plaintiff from a judgment dismissing the
action on its merits for noncompliance with the conditions upon which
plaintiff was to have the relief asked for in his complaint. A former appeal in the case is reported in 116 Minn. 414, 133 N. W. 986.

It appears that plaintiff, on March 19, 1907, was severely injured
through the alleged negligence of defendant and brought an action
to recover the damages sustained. At the trial thereof a verdict was
directed for defendant, but on appeal a new trial was awarded. Rasc
v. Minneapolis, St. P. & Sault Ste. Marie Ry. Co. 107 Minn. 260,
120 N. W. 360, 21 L.R.A.(N.S.) 138. Before a new trial could
be had, and on March 23, 1909, the defendant behind the back of
plaintiff's attorneys, obtained from him a stipulation dismissing the
action on the merits for $2,000 and transportation for himself to Norway. On November 1, 1909, he claims he discovered that fraud and
deception had been practised on him in the settlement, and in January, 1910, he brought the present action, alleging the fraud, and
asking that the stipulation mentioned be set aside, and he be permitted to try the action the same as if the stipulation had never been
made.

Upon the trial the court found that plaintiff was a laborer, with
imperfect knowledge of the English language, having come to this
country from Norway in 1901; that while in defendant's employ,
through its alleged negligence, he received permanent injuries which
resulted in the total loss of sight in one eye, total loss of hearing in
one ear, partial paralysis in the right half of the face and tongue,
atrophy of his right deltoids, escape of some of the brain tissue
through an opening in the right ear, and other injuries.

The court also found that on March 18, 1909, fifteen days after

the new trial was granted by this court in the personal injury action, one Sandager, familiar with the Norwegian language, a detective in the employ of the Omaha Railway Company, while pretending to be working for plaintiff's attorney, one Dampier, ingratiated himself with plaintiff, took advantage of the latter's weakness and ignorance, and induced him to take up his residence at Sandager's home, and wilfully represented to plaintiff that his said attorney was crooked and intended to settle the case for $1,000 and cheat plaintiff out of all. Sandager plied plaintiff with liquor continuously, and on the twenty-second of March obtained a contract from him employing Sandager to settle with defendant, for which Sandager was to be paid one-third of the amount received, but not less than $500. The court also finds that during this time Sandager was paid by the said Omaha Railway Company for work as a detective under one Greene, who was also in the secret service of said company, both engaged in discovering fraud in spurious personal injury actions pending against railway companies in the state, and had been particularly employed in investigating personal injury cases handled by said Dampier; but Sandager, under direction of Greene, pretended to plaintiff that he was working for Dampier. Through the efforts of Greene and Sandager, acting with the knowledge and at the request of defendant, a meeting was arranged with defendant's claim agent on March 18, 1909, for the purpose of settling the claim without the knowledge of plaintiff's attorney, and daily meetings were had till March 23 for that purpose. During these meetings defendant's claim agent and Sandager wilfully represented to plaintiff that his said attorney was a cheat and a crook, and was representing to defendant that plaintiff was crazy, and that Dampier would settle for $1,000, so that plaintiff would get nothing. These representations were wilfully false, and were made to induce plaintiff to settle behind the back of his attorney. In reliance on these representations plaintiff, for $2,000 and a passage ticket to Norway, signed a settlement and dismissal of the case. Plaintiff departed for Norway. The court also finds that the consideration paid plaintiff as compensation for his injuries was grossly inadequate, and "that through the misrepresentations so made to plaintiff by defendant, and upon which plaintiff relied, he was

deprived of the advice of an attorney, and by reason thereof, and because of his physical and mental disabilities hereinbefore described, plaintiff did not appreciate and understand the extent of his rights at the time he signed said release, voucher, and stipulation, and did not know he was thereby releasing all claim against defendant for the cause of action which then existed in his favor; that by reason of the matters aforesaid the rights of the plaintiff were fraudulently overreached in favor of defendant, and that defendant thereby gained an unfair and unconscionable advantage over plaintiff in the settlement of his said cause."

The conclusions of law were: "That upon payment by plaintiff to defendant within sixty days from the date hereof of said sum of $2,000 and interest, together with an amount equal to the value of the transportation furnished plaintiff by defendant from St. Paul to Norway, plaintiff is entitled to a decree" setting aside the dismissal of the former action and allowing it to proceed to trial.

After the decision was filed, a motion was made by plaintiff to amend the findings of fact and conclusions of law to the effect that plaintiff had incurred a large expense in going to Norway, remaining there some time, and in returning, induced to do so through defendant's fraud, and that plaintiff had spent all or nearly all of the sum received, and had no money or means with which to repay defendant, and that plaintiff should have the relief granted without returning any part of the consideration, but that, if a verdict is had upon the trial of the action, $1,500 received by plaintiff be applied on the verdict. This motion was denied, as was also a subsequent motion to open the case and permit plaintiff to introduce further proof of his inability to comply with the condition. Upon the former appeal herein (116 Minn. 414, 133 N. W. 986) the order on the first motion was held not appealable, and the order on the second was affirmed, as being discretionary, even if not appealable.

This appeal from the judgment presents the question whether or not it was proper, upon the evidence and the findings, to require plaintiff to pay back what he received before he is entitled to try the original case. We reach the conclusion that the condition imposed by the learned trial court practically denies plaintiff relief

from a deliberately planned fraud upon him; for there is no finding that plaintiff has now the money, or any means, so that he can comply.

On the contrary, the inference is almost conclusive that a large part of the money is gone, so that some one else must furnish the means if plaintiff is to have his case tried under the decision herein. Courts do not look with favor on attorneys assisting their clients in this manner, even if the ability existed, and where else may plaintiff look for aid? Plaintiff, an ordinary laborer, could not have accumulated very much in the six years he was here preceding the accident, and from the injuries received it is certain he has been able to earn little, if any at all, since. The ticket to Norway is gone. So are the necessary expenses on the trip there and return. He gave part of the money to his mother in Norway, and fixed up the house for her. Greene admits Sandager paid him $25, and says plaintiff paid Sandager, and the inference is irresistible that the latter obtained the $500 he bargained for. The court also determined that he should pay interest. This, in itself, is quite a sum for a permanently injured and crippled laborer to raise.

We fully recognize and adhere to the wholesome rule that, where one comes into court and asks its aid to undo a fraudulent deal, he should do equity and restore what he obtained from the party who defrauded him. But it is also well settled that where there is inability to restore, and the matter settled by the fraudulent transaction is an unliquidated claim, the court has the power to let such claim be litigated and determined, and do justice and equity by applying what was received in the settlement upon the verdict or judgment ultimately obtained. Merrill v. Pike, 94 Minn. 186, 102 N. W. 393; Marple v. Minneapolis & St. L. R. Co. 115 Minn. 262, 132 N. W. 333; Thackrah v. Haas, 119 U. S. 499, 7 Sup. Ct. 311, 30 L. ed. 486. Otherwise, the wrongdoer goes unwhipped of justice in every case where fraud is practised on the improvident or poor, who forsooth have spent some of what was obtained in the deal before discovering the fraud.

From the evidence in the case the suggestion is near at hand that plaintiff was induced to go to Norway in the hope that he would

remain there, and thus the conduct of Sandager and defendant could · never be questioned. If this be so, and if the large expense of such trip necessarily came from the money obtained from defendant, so that now it is impossible for plaintiff to restore what is spent and gone, it amounts to a denial of justice to plaintiff to require him to pay back the amount received as a condition precedent to the trial of his personal injury action. In imposing conditions on plaintiff, the possible outcome of the personal injury action, and how it might affect defendant, should be borne in mind. If plaintiff has a legal claim against defendant, and it be true, as the court found, that the amount settled for is grossly inadequate, then it would follow that nothing ought, in justice, be returned before trial, because plaintiff would then recover more than he has received. On the other hand, if there is no valid claim, but defendant was merely buying peace, or doing an act of humanity for one injured in its service, or the trial court is mistaken in the finding that the settlement was inadequate, then, of course, in such a contingency the expense of the trial will fall on defendant unjustly. But it appears to us that this expense to the one found guilty of deception is not of sufficient consequence to warrant a court of equity in denying the defrauded one his day in court. Of course, it is entirely right and proper to require a return to defendant of so much as plaintiff is able to return, so as to protect the defendant against the contingency mentioned. But to require more in this case would be to deny justice to plaintiff. As said in the case of I. L. Corse & Co. v. Minnesota Grain Co. 94 Minn. 331, 102 N. W. 728: "The party guilty of the fraud is not entitled to anything more than substantial justice, and a fair opportunity to receive what he parted with."

In the instant case it cannot be determined fully what is substantial justice until plaintiff's cause of action and the amount thereof is determined in the suit fraudulently settled. In fact, this action is equivalent to a direct application in the action settled and dismissed to set aside the settlement and dismissal and proceed to trial. Mr. Justice Bunn, in the Marple case, supra, after considering the cases therein cited upon the necessity of first returning what was obtained under the tainted contract, concludes that: "The real ground of·all

the cases, we think, is that there is no reason for the strict application of the rule when substantial justice can be meted out in the final disposition of the case."

There is nothing in the cases relied on by defendant contrary to the view above expressed. Carlton v. Hulett, 49 Minn. 308, 51 N. W. 1053, and in the second appeal Carlton v. Carey, 61 Minn. 318, 63 N. W. 611; Knappen v. Freeman, 47 Minn. 491, 50 N. W. 533; Nelson v. Carlson, 54 Minn. 90, 55 N. W. 821. These are cases to set aside real estate transactions or trades. Even in such actions, restoration in kind is not always required before the court decrees rescission, but in each case the court aims at substantial justice, and will not allow the one guilty of fraud to escape from the consequences of his acts, because the defrauded one is unable, technically, to comply with the rule requiring restoration.

There is no merit in defendant's contention that because an order was made December 22, 1910, denying plaintiff's motion to modify the findings of fact and conclusions of law, notice of which was duly served on plaintiff December 24, 1910, and no appeal taken within the time allowed by statute, plaintiff is too late in asking a review thereof in this appeal. The answer is: It was not an appealable order, and therefore the error, if any, in its denial, may be reached only on appeal from the judgment where no motion for a new trial has been made. Therefore, as long as the judgment may be attacked on appeal, every nonappealable order made before its rendition is subject to review.

The judgment appealed from must be reversed, and the cause remitted to the court below, to ascertain and determine how much, if any at all, of the amount plaintiff received on the fraudulent settlement he is able to repay before trial of his said personal injury action against defendant, and to modify the conclusions of law in accordance with this opinion.