ADOLPH HIRSCHMAN v. MAURICE J. HEALY.[1]

March 20, 1925.

No. 24,360.

**Error to direct verdict for amount of note when amount of damages exceeds interest sued for.**

1. In this action to recover interest due on a promissory note, defendant proved misrepresentation of the quality and value of the land bought of plaintiff under a contract in which transaction the note was given. It was error to direct a verdict for plaintiff on the ground that no damages had been shown, for the land if as represented would have exceeded in value the purchase price of $56,585.64, while the proof showed it worth no more than $15,000, hence the difference in values, or damages, exceed the interest sued for.

**Error to dismiss counterclaim for rescission for fraud.**

2. It was error to dismiss the counterclaim for rescission. In rescission by the court for misrepresentations regarding the subject matter of a contract, it is not indispensable that pecuniary damages be shown. It is enough that the party did not receive substantially that which it was represented he would get.

**Rescission not prevented because wrongdoer cannot be restored to his statu quo.**

3. Nor does the impossibility of restoring the wrongdoer to statu quo necessarily prevent the court from granting rescission to the one wronged. It is sufficient if the latter makes such restitution as may be just and within his power.

**Cause for rescission may show in this case by preponderance of evidence.**

4. A preponderance of the evidence is sufficient in the instant case to establish a cause for rescission. The settlement obtained was for the prior fraud of another party, in the settlement of which this plaintiff obtained the contract sought to be rescinded by misrepresenting the subject matter thereof.

[1]Reported in 202 N. W. 734.

**Error to dismiss counterclaim without making findings.**

5. It was error to dismiss the counterclaim without making findings upon the issues presented.

*Headnote 1. See Vendor and Purchaser, 39 Cyc. p. 1976.

Headnote 2. See Vendor and Purchaser, 39 Cyc. p. 1255.

Headnote 3. See Contracts, 13 C. J. p. 619, § 678; Vendor and Purchaser, 39 Cyc. p. 1423.

Headnote 4. See Contracts, 13 C. J. p. 778, § 979; Vendor and Purchaser, 39 Cyc. p. 1437.

Headnote 5. See Trial, 38 Cyc. p. 1954.

Action in the district court for Ramsey county to recover interest upon a promissory note. The case was tried before Michael, J., who directed a verdict in favor of plaintiff for $5,516.13. Defendant appealed from an order denying his motion for a new trial. Reversed.

*Cowern & Jesmer*, for appellant.

*Jesse E. Greenman* and *Edgerton & Dohs*, for respondent.

HOLT, J.

The counterclaim was dismissed and a verdict directed for plaintiff. Defendant appeals from the order denying a new trial.

The record discloses that in July, 1917, defendant, after an examination of a 5,000-acre tract of land in northern Michigan, bought the same on contract from Interstate Farms Company for $89,585.64. Thirty-three thousand dollars were paid in cash, and 10 promissory notes given for $56,585.64. In October of the same year this plaintiff bought the notes before maturity, took an assignment of the contract, and a deed to the land as collateral security. Before this was done the company, through its officers, had detached the description of the land from the contract and substituted therefor another tract of 5,000 acres of much inferior land. When defendant ascertained this he instituted an action against the company, its officers, and this plaintiff to cancel the contract for fraud and claiming damages. That action was settled and a stipulation of dismissal on the merits filed February 18, 1919. The settlement appears to have been made separately between Healy and the com-

pany and Healy and Hirschman, the company giving notes and bonds to Healy of the face value of $32,500 for the $33,000 cash he had paid, and Hirschman, with the consent of the company, surrendering the notes of Healy, except one of $5,700 previously paid, and giving Healy a contract to sell him the same 5,000 acres substituted for the land originally purchased from the company and which Hirschman now owned. Healy on his part agreed to pay $56,585.64 for the land, $3,925 of which was paid in cash, and $52,660.64 according to the terms of a promissory note for that amount. The present suit is to recover interest upon that note. Defendant Healy answered, and as a defense alleged that, in making this new contract, plaintiff Hirschman represented the 5,000 acres to be well drained land, and practically all capable of cultivation; that he had seen it and knew it to be such; that it could be sold for and was worth $20 per acre; that it was as good as the 5,000 acres examined by defendant; that he relied on the truth of these representations in making the deal; that they were false, the land not being drained or capable of drainage, but mostly a swamp interspersed with sand mounds, and unfit for cultivation and not worth more than three dollars an acre. The same allegations were also alleged as a counterclaim, upon which defendant asked for cancelation and equitable relief.

The learned trial court gave as a reason for a directed verdict, that, granting there was evidence of fraud in obtaining the note in suit, evidence of damages was lacking. And as to dismissing the counterclaim for rescission, the reason given was the impossibility now to place plaintiff in statu quo.

It would seem that damages were sufficiently proven by the evidence that defendant agreed to pay over $56,000 for land worth for speculative purposes only $15,000. But it may be said that in the transaction the prior deal was involved in which Healy had paid $33,000 cash and in addition had agreed to pay the same amount which he by the contract with Hirschman was to pay for the same land. Assuming that the notes and bonds of the face value of $32,500, which Healy got from the land company in the settlement of the first action, should be considered as reducing the damages

sustained on account of the misrepresentation of the land by Hirschman, inducing Healy to purchase it, there would still be a loss to Healy of over $9,000 not figuring the note of $5,700 on the first deal which he had paid, nor the interest and taxes also paid by him. This would more than offset the interest sued for, so that, conceding a legal obstacle to granting rescission, we think there was a jury question in the defense pleaded.

Coming to the question of the dismissal of the counterclaim, it is to be noted that it was not indispensable to prove damages in dollars and cents to have cancelation or rescission of the contract and note for misrepresentations. It would be quite enough to show that the land was not substantially of the kind, quality and value represented. It was not necessary to prove a fraudulent intent. Martin v. Hill, 41 Minn. 337, 43 N. W. 337; MacLaren v. Cochran, 44 Minn. 255, 46 N. W. 408; Knappen v. Freeman, 47 Minn. 491, 50 N. W. 533; Pennington v. Roberge, 122 Minn. 295, 142 N. W. 710; Fawkes v. Scott, 138 Minn. 384, 165 N. W. 236; Kirby v. Dean, 159 Minn. 451, 199 N. W. 174.

The other reason given for dismissal of the counterclaim was the impossibility of now placing plaintiff in statu quo. But a court of equity should give more consideration to restoring the victim of the misrepresentations than the author thereof to statu quo. "The fundamental theory upon which equity acts is that of restoration,—of restoring the defrauded party primarily, and the fraudulent party as a necessary incident, to the positions which they occupied before the fraud was committed." 2 Pomeroy, Eq. Jur. § 910. In Masson v. Bovet, 1 Denio (N. Y.) 69, 74, a case often cited with approval, the court speaking of restoration, says: "This is not exacted on account of any feeling of partiality or regard for the fraudulent party. The law cares very little what his loss may be, and exacts nothing for his sake. If, therefore, he has so entangled himself in the meshes of his own knavish plot, that the party defrauded cannot unloose him, the fault is his own; and the law only requires the injured party to restore what he has received, and, as far as he can, undo what has been done in the execution of the contract. This is all the party defrauded can do, and all that

honesty and fair dealing require of him. If these fail to extricate
the wrongdoer from the position he has assumed in the execution
of the contract, it is in no sense the fault of his intended victim,
and upon the principles of eternal justice, whatever consequences
may follow, they should rest on the head of the offender alone."
See also as to the question of exact status quo, Clark v. Wells, 127
Minn. 353, 149 N. W. 547, L. R. A. 1916F, 476; Neblett v. Mac-
farland, 92 U. S. 101, 23 L. ed. 471; Freeman v. Reagan, 26 Ark. 373;
Brown v. Norman, 65 Miss. 369, 4 South. 293, 7 Am. St. 663; Ring
v. Ring, 105 N. Y. Supp. 498 (affirmed 199 N. Y. 574, 93 N. E. 1130).
And so in Rase v. M. St. P. & S. Ste. M. Ry. Co. 118 Minn. 437, 137
N. W. 176, a party who by fraud had been induced to settle a cause
of action was permitted to maintain the action, although he had
spent some of the money obtained in the settlement and was unable
to restore it. It is true, Hirschman was not a party to the original
contract nor to the fraud claimed to have been practiced therein,
and was probably a holder in due course of the first Healy notes,
surrendered when the settlement was made. He cannot now be
invested with the status of an innocent holder of those notes, even
if Healy should be directed to return them, nor can he have recourse
to the indorser, the land company, for there was no fraud on its
part in the settlement which must stand as to the company. It
does not appear that the land company or its officers now have any
interest in either the land or the note in suit. But this is a situa-
tion brought about by the misrepresentation of Hirschman alone.
The evidence indicates that Mr. McCann, the president of the land
company, advised Healy against the settlement and contract he
made with Hirschman. But then Healy had confidence in Hirsch-
man believing him a friend, and distrusted McCann because of his
alteration of the first contract. Assuming that Hirschman was an
innocent holder of the notes upon the first contract, he accepted in
lieu thereof the note in suit and the cash with his eyes open. He
was willing to forego his position of innocent holder upon the un-
paid first notes for the larger amount of the note in suit and the
cash. He evidently considered the recourse he had, if any, against
the transferrer of the first notes of little, or no value. The maker

is the same of the notes surrendered as of the one in suit. Hirschman still holds the land accepted in the first place as security. If its value is what, it is claimed, he represented it to be, he is more than protected. If not, the loss is the result of the entanglement wrought by misrepresentations made by him alone, and, upon the principle stated in the above cited authorities, this should not prevent the court from granting defendant rescission upon such restoration as it is now possible and just for him to make.

It is strongly urged by respondent that Healy ratified the contract after discovery of the fraud, and also delayed too long after such discovery to assert his rights to cancelation by the court. The trial court did not pass upon these issues, and we think the evidence, as it stood when plaintiff rested, made the same questions to be determined as matters of fact. The circumstances surrounding the discovery of the fraud, the opportunity and time needed to ascertain the extent of the misrepresentations, the situation of the parties, the distance away of the land involved and other matters, have a bearing upon the question of unreasonable delay. Where misrepresentations relate to property of rapidly fluctuating value, a slight delay may be fatal to the right of rescission, while, if they relate to property which changes but slightly in value or condition, the lapse of time may be of less importance.

Plaintiff also insists that the proof of misrepresentation must be clear and convincing in order to have any relief. This is a misapprehension of the issues involved. This is not a counterclaim or defense depending upon first setting aside a written release. It is an attack upon a note and contract made and executed in reliance upon false representation made by the party who obtained the instruments. The settlement and dismissal on the merits of the action involving the prior fraud of the land company are not sought to be set aside. The fraud or misrepresentations in such a case may be proved by that preponderance of evidence required to sustain the affirmative of any ordinary issue in court. Whether defendant relied on the representations and whether representations as to value in this case were such that defendant had a right to rely thereon were issues upon which findings should have been made as the case stood when

the testimony closed. The law cited by plaintiff is not in dispute upon the proposition above suggested, but it cannot well be applied until findings are made covering the issues.

We are of the opinion that it was error to dismiss the counter-claim.

The order is reversed and a new trial granted.