SMITH *v.* McWHORTER, trustee.

No. 7957. JULY 16, 1931. REHEARING DENIED SEPTEMBER 23, 1931.

*Abrahams, Bouhan, Atkinson & Lawrence,* for plaintiff in error.
*Charles E. Donnelly,* contra.

256

Russell, C. J. This was an equitable proceeding brought by Edwin A. McWhorter as trustee in bankruptcy of Realty Savings & Trust Co., against Realty Investment Co., W. H. Stillwell, and L. H. Smith, seeking to set aside a security deed executed to Smith by the Realty Investment Co. through Stillwell, its president. Among the assets of the bankrupt company were 530 shares of stock of the Realty Investment Co., previously in the hands of a creditors' committee, now in charge of the plaintiff as trustee in bankruptcy. It is charged that the security deed executed by Stillwell as president to Smith was made without any resolution of the board of directors or stockholders of the Realty Investment Company for so doing. That on October 12, 1928, a purported meeting of stockholders of Realty Investment Company was held in the offices of the company, and the following resolution passed:

"Whereas Realty Investment Company and Silk Hope Company, both corporations of Savannah, Georgia, on September 11, 1928, entered into a written agreement of purchase and sale, providing for an exchange of an equity in the Realty Investment Company's Realty Building and the lot on which it is located, for unencumbered acreage in Chatham County, Georgia, owned by the Silk Hope Company, upon the terms and conditions therein specifically set forth, a copy of which agreement is recorded as a part of the minutes of the Board of Directors of the Realty Investment Company, held on September 11, 1928, and a copy of which agreement has been submitted and read to the stockholders of this meeting of the stockholders of Realty Investment Company; and whereas the Board of Directors of Realty Investment Company, at a meeting held on September 11, 1928, authorized the making and execution of said purchase and sale, and resolved that it was necessary to make such exchange for the purpose of meeting the company's obligations: Now therefore be it resolved by the stockholders of Realty Investment Company that the making and execution of said agreement of purchase and sale be and the same is hereby ratified; and resolved further, that the Board of Directors of the Company be and is hereby authorized and empowered to pass such other resolutions as may be necessary, advisable, or required for the purpose of authorizing officers of the Company to execute and deliver the deed from Realty Investment Company to the Silk Hope Company, to accept the deed from the Silk Hope Company to the

Realty Investment Company, and to otherwise comply with and carry out the terms of said agreement of purchase and sale."

And that, pursuant to the above resolution of the stockholders, the board of directors of the Realty Investment Company adopted the following resolution:

"Whereas the stockholders of Realty Investment Company, at a meeting duly called for such purpose, this day held at the offices of the company, passed the following resolution [quoted above]: Now therefore be it resolved by the Board of Directors of Realty Investment Company that the president and secretary of the company be and are hereby authorized and directed to execute and deliver, for and in the name of Realty Investment Company, a deed of conveyance to the Silk Hope Company all the property mentioned, to accept the deed from the Silk Hope Company to the Realty Investment Company, covering the unencumbered acreage described in said agreement of purchase and sale, and to otherwise comply with and carry out all the terms of said agreement of purchase and sale."

The exchange of properties was completed November 1, 1928; and on November 3, 1928, the security deed now sought to be canceled was executed by the Realty Investment Company through W. H. Stillwell acting as president. The consideration recited in this deed is $36,265.06. It is alleged that this sum is composed of the following items, according to the sworn answer of L. H. Smith in a former suit brought by the plaintiff, which was dismissed: commissons on deal for Silk Hope lands, $25,000.00; payment of $8,431.64 due by Realty Investment Co. to L. H. Smith for cash advanced by him to make Silk Hope deal; payment of two loans due Smith by Realty Investment Co., $2295.00; payment of loan due Smith by Stillwell, $538.42. The petition alleges that Smith was repaid by the Silk Hope Co. $8,000.00 of the advance made by him in connection with the deal with them; that the loans claimed to be due by the Realty Investment Co. to him of $2295.00, as well as the item of $538.42, were individual debts of Stillwell; that he was only due $8,000.00 for consummating the exchange of properties between the Realty Investment Company and the Silk Hope Co.; and that payment of $25,000.00 for this service was never authorized by the directors of the former corporation.

It appears that the Realty Building conveyed by the Realty In-

vestment Co. was encumbered with three mortgages, one in favor of Metropolitan Life Insurance Co., one in favor of F. M. Oliver and C. W. Miles, trustees, and a third one in favor of certain third-mortgage bondholders. The first loan was in arrears as to interest in the sum of $8,350. Smith entered into an agreement with the holders of the third mortgage, reciting the other encumbrances on the property, and that an exchange had been arranged between Realty Investment Co. and Silk Hope Co., by the terms of which the former was to convey to the latter its equity in the Realty Building, in exchange for certain unencumbered land owned by the Silk Hope Company. In this agreement Smith agreed to advance the $8,350.00 required to take care of the past-due interest on the first mortgage; and the holders of the third mortgage agreed to subordinate their claim to his claim for such amount paid, in the event the deal with the Silk Hope Company was not put through. It is recited in this contract that the Silk Hope Company was to pay Smith, in the deal, $8,000.00 which was to be credited on the amount of interest he was to pay. It was set forth that of the lands received by the Realty Investment Company, the tract known as the Silk Hope Plantation and Subdivision, and three small tracts facing the Louisville Road totaling approximately 65 acres, were to be pledged to Smith to secure money loaned in payment of taxes due by Realty Investment Company and his broker's commission and other expenses connected with the closing of the deal between the Realty Investment Company and the Silk Hope Company; and that the holders of the third mortgage on the Realty Building would be given security for their money on other land to be received by the Realty Investment Company, and would release their claim on the Realty Building. The Realty Investment Company, by Stillwell as president, also made an agreement with the holders of the third mortgage, in accordance with the above contract with Smith; but this contract only provided for securing Smith for advances made by him in completing the deal, and not for securing the payment of any commission.

It is alleged in the petition that Stillwell, as president of the Realty Investment Company, voted the shares of stock in the Realty Investment Company belonging to Realty Savings & Trust Co., when he had no authority to do so, that he assigned 770 shares of the stock in the Realty Investment Company to Smith, who

voted them at the stockholders' meeting of October 12, 1928; that the regular annual stockholders' meeting should have been held in July, 1928; that no notice was given to stockholders of the meeting of October 12, 1928, and that such meeting and the election of directors thereat was illegal. Smith, upon default being made in the payment of interest on the loan of $36,265.06, and in accordance with the terms of his loan deed, appointed Stephen A. Wilson as trustee, who proceeded to advertise the property covered by the security deed, and it was sold and bid in by Smith for $35,300.00. It is charged in the petition that Smith agreed to procure a loan of $20,000.00 or $30,000.00 on lands acquired by the Realty Investment Company through its deal with the Silk Hope Company, which he failed to do, only procuring a loan of about $11,000.00; that part of "L. H. Smith's duty in earning the $25,000.00 commissions was to borrow $20,000.00 or $30,000.00 on the property, or at least enough money to complete the transaction, he to be paid, for this service as well as selling the property, a lump sum of $25,000.00 as broker's charges and commissions, and when he secured the loan from himself of approximately $11,000.00 and accepted the $25,000.00 commissions in full he paid himself for securing a loan of his own money, in addition to demanding 8% interest on the full amount."

It is alleged that the trustee, Wilson, made no effort to preserve the equities of the Realty Investment Company in making the sale under the power in Smith's deed; that the security to be given Smith was to be only about 2300 acres, while the deed executed conveyed 4400 acres; and that the value of this 4400 acres was about $200,000.00, which Smith secured for his bid of $35,300 subject only to a first mortgage of $10,000.00. The prayers were: (a) That the sale by Wilson, as trustee under the power in the security deed executed by Realty Investment Company to L. H. Smith, be set aside; (b) that the deed made to Smith by the trustee be canceled; (c) that Smith be required to execute a deed to the above property, placing the title to same in Realty Investment Company; (d) that the security deed executed by the Realty Investment Company to Smith be declared void; (e) that Smith be required to produce the security deed described, and that it be canceled; (f) that Smith be required to cancel the evidence of debt secured by the loan deed to him; (g) that this court ascertain what moneys were

actually loaned to the Realty Investment Company by L. H. Smith, add thereto $8,000.00 as a reasonable compensation for selling the property of Realty Investment Company, and then require Realty Investment Company to execute another debt deed for the amount due L. H. Smith, less $8350.00 taxes wrongfully charged back to Realty Investment Company, and less $1500.00 which L. H. Smith was to have paid for the refrigerator system, and less such amounts as L. H. Smith charged against Realty Investment Company, which amounts were charged under authorization from W. H. Stillwell, and which amounts were not chargeable to Realty Investment Company or assumable by it, and also less interest charges illegally placed in the original deed to secure debt herein complained of; the total sum to be covered by the debt deed which petitioner prays to have Realty Investment Company execute being approximately $6259.94; (h) that the debt deed prayed for in subsection (g) hereof convey to L. H. Smith as security for such debt such an amount of the property described as will be sufficient to secure the debt; (i) that the defendants be required to show cause why the prayers of petitioner should not be granted; (j) that the court grant such other and further relief as may be equitable and just; (k) that the defendants be enjoined from selling, assigning, transferring, or in any manner disposing of any part or all of the property alleged to have been deeded to them, and from selling, assigning, transferring, or in any wise disposing of any or all of the deeds to secure debt, any part or all of the debt secured thereby, and any and all of the evidences of the debt secured thereby, that are herein alleged to have been executed, transferred, and delivered to them, etc.

L. H. Smith filed general and special demurrers. The substance of the general demurrer was that the plaintiff, while ratifying the illegal acts complained of in so far as the same resulted in the Realty Investment Company acquiring title to the Silk Hope tract of land, sought to avoid other parts of this same transaction, by which the Realty Investment Company became indebted to Smith for consummating the deal. Judge Meldrim passed the following order:

"With some 36 pages of petition and 16 of demurrers, it is difficult to determine with reasonable certainty the issues involved. As near as I can get at it, Smith, the defendant, was a real-estate

broker, and Stillwell was president of the Realty Investment Co. The Realty Co. made a deed to Smith on November 3, 1928, conveying to him a large body of land in the Ogeechee district. The object of this suit is to cancel that deed. The action is by McWhorter, trustee in bankruptcy of the Realty Savings and Trust Co., which company owned 480 shares of the par value of $48,000 in the Realty Investment Co. It is averred that Smith and Stillwell made a corrupt bargain by which Smith was to receive $25,000 for commissions. What Stillwell was to receive, if anything, does not appear. The averment is that to carry out the scheme to defraud the stockholder, the Realty Savings and Trust Co., the deed of November 3 was made and delivered, and that under the power of sale contained in said deed Smith had acquired at far below its value the property described in the exhibit attached to the petition. In making this brief statement of the substantial averments in the petition, it should be clearly understood that I am compelled on demurrer to accept the averments in the petition as true. Nothing herein contained is to be construed as the expression of opinion as to the truth of the averments. The 15th ground of demurrer is sustained. The 'force' averred to have been used by Smith should be stated, the time when used, and the nature of the force. So much of the demurrers as object to the averments of usury, and especially subdivision (h) of the 17th ground of demurrer, are sustained. Let the petitioner comply with Code § 5674. Ten days are allowed in which to amend. The demurrers, other than the above, are overruled.

The plaintiff amended as follows: "First. By striking from the 28th paragraph of said petition the word 'forced,' which appears in the fourth line from the bottom of the sixteenth page, and by substituting for and in lieu thereof the word 'had.' Second. By adding to said paragraph as paragraph forty-three thereof the following: 43rd. Petitioners show that the sum upon which usury was to be paid was $11,000.00, for which the Realty Investment Company executed to L. H. Smith a deed to secure debt and delivered a note bearing 8% per annum. That the contract was executed on November 3, 1928; and in addition to agreeing to pay 8% per annum on the $11,000.00 borrowed from L. H. Smith, the Realty Investment Company paid L. H. Smith, as securing the loan, the sum of $900.00, and further paid L. H.

Smith $2,000.00 and interest, debts of other people which the Realty Investment Company was not obligated to pay, and further paid $1500.00 which was a bill for refrigerators and which Realty Investment Company was not obligated to pay, as it was a personal debt of L. H. Smith. That the amount of usury agreed upon and taken and reserved was $4500.00, and it was deducted from the $11,000.00 at the time the loan was made on November 3, 1928, and the debt deed was executed to secure said loan. That the loan of $11,000.00 was to be paid back in 3 years, but was to bear 8% during that time in addition to the usurious amount deducted from the $11,000.00." The defendant renewed his demurrer to the petition as amended; and Judge Meldrim ruled as follows:

"It appears from the amendment filed by plaintiff, May 6, 1930, that the Realty Investment Co. executed to Smith, on November 3, 1928, a deed to secure debt. It further appears that $900 was paid by the company to Smith, which sum it is alleged was usury. The law is well settled that an action to recover usury must be brought within one year after such payment is made. The demurrant says that it appears on the face of the amendment that the alleged payment was made more than a year before the suit was commenced. I do not so read the amendment. Smith, it appears, lent the company $11,000, for which he charged interest at 8 per cent. This contract was executed November 3, 1928. But when was the $900 paid to Smith for 'securing the loan'? It may have been paid on November 3, 1928, or November 3, 1929, so far as the amendment shows. The demurrer, as to the $900, must be overruled; but in overruling it, nothing is to be taken as depriving the defendant of his right to file a plea that the action is barred. I do not understand that the payment by the Realty Investment Co. to Smith of $2,000, 'debts of other people,' and of $1500, 'a bill for refrigeration,' are sought to be recovered *as usury* paid by the Investment Co. to Smith. As I understand the plaintiff's case, it is this: Smith lent to the company, either directly or indirectly, $11,000. He charged the company 8 per cent. interest. He also charged the company $900 for securing the loan, and deducted this sum, together with $2000, 'debts of other people,' and $1500, 'a bill for refrigeration.' I do not think that the two items of $2000 and $1500 can be recovered as *usury*. It seems to me that what the trustee in bankruptcy is seeking to do is to have

an accounting with Smith. If Smith had and is receiving money or other thing of value for which he should account in equity and good conscience, then the duty of the trustee is to have Smith come to an account. I hold, as to the demurrer filed May 7, 1930: 1. That the demurrer to the $900 is overruled for the reason heretofore stated.. 2. That the demurrer as to the items $2000 and $1500 is sustained as to usury. The plaintiff can not recover these items, or either of them, as usury."

To the judgment on the demurrers Smith excepted.

■■ The first and second headnotes require no elaboration.

■ A distinction is to be drawn between mere useless pleading and that which may properly be styled duplicitous. A declaration is duplicitous when it contains in the same count more than one fact, or set of facts, for the recovery of a single demand, any one of which would justify the recovery. 7 Enc. Pl. & Pr. 237. An allegation with respect to, or a prayer for, alternative relief, or relief to which the party is not entitled, if based upon a consistent statement of a single set of facts, can not properly be made the subject-matter of a charge of duplicitous pleading. The petition in this case is not subject to demurrer on the ground of duplicity. "Duplicity in pleading on the part of a plaintiff consists, not in asserting a right to and praying for relief inappropriate to the cause of action set forth in his petition, but in making therein equivocal statements with a view to getting the benefit of two or more inconsistent theories as to his right to recover, or in basing his complaint upon different versions with respect to the facts which gave rise thereto." Orr v. Cooledge, 117 Ga. 195 (3) (43 S. E. 527). In view of this principle, it can not be said that the judge erred in overruling the several special demurrers to the petition. Judgment affirmed. All the Justices concur.

ON MOTION FOR REHEARING.

RUSSELL, C. J. The plaintiff in error has made a motion for a rehearing "upon the ground that the court has overlooked material facts in the record which would require a different judgment from that rendered." In this motion our attention is directed to the fact that our failure to rule expressly upon a number of the grounds of special demurrer may result in injustice to the plaintiff in error, by becoming fixed as the law of the case and therefore binding in the trial of the case hereafter. In other words, that the affirmance

of the judgment of the lower court upon some of the demurrers, though not the true law, by becoming the law of the case will operate to the prejudice of the plaintiff in error. We recognize the rule to which the plaintiff in error refers, and realize the danger he anticipates. For this reason we have carefully reviewed the pleadings of the plaintiff and the demurrers of the defendant, seriatim, to the end that no injustice be done by so shaping the course or conduct of the trial as to preclude either party from asserting any right to which he may be entitled, should the final trial be subjected to review by this court.

To take up the grounds of the motion for rehearing seriatim: We might content ourselves by saying that our ruling as to the 4th, 5th, 6th, 7th, and 8th grounds of the demurrer, was sufficiently correct, and that the plaintiff in error would not be injuriously affected by its becoming the law of the case; but we do not object to stating our reasons for sustaining the judgment of the trial court in overruling these grounds of the demurrer. The 4th and 5th grounds of the demurrer allege non-compliance by the plaintiff and his predecessors with the conditions of § 2224 of the Code of 1910, in the case of proceedings by minority stockholders of corporations. It is alleged in the petition: "That petitioner is without adequate remedy at law in the premises, as he represents the interests of minority stockholders." "That petitioner filed an action within a few days after his appointment as trustee in bankruptcy of the Realty Savings & Trust Co., which action could not fully meet the conditions, and which he dismissed on the day this suit was filed." "That petitioner has acted promptly, but has not endeavored to obtain any redress at the hands of directors and stockholders of the corporation, for the reason that such action could not have been taken in time to prevent a sale of the property sought to be enjoined, as such sale was held within 8 days after the first petition was filed. Also it would not be reasonable to require an effort to obtain redress at the hands of directors and stockholders, as the fraudulent transactions of the corporation were all conducted by W. H. Stillwell and L. H. Smith, who owned the majority of stock in said corporation, and who could at all times control the vote of stockholders should the matter be brought to their attention by protest."

Section 2224, supra, provides that: "A minority stockholder

may proceed in equity in behalf of himself and other stockholders, for fraud, or acts ultra vires, against a corporation, its officers, and those participating therein, when he and they are injured thereby. But there must be shown— . . such a fraudulent transaction completed or threatened, among themselves or shareholders or others, as will result in serious injury to the company or other shareholders; . . and it must also appear that petitioner has acted promptly; that he made an earnest effort to obtain redress at the hands of the directors and stockholders, or why it could not be done, or it was not reasonable to require it." According to the allegations of the petition, the plaintiff qualified as trustee of the Realty Investment Co. on June 27, 1929, and the property which is the subject-matter of this proceeding was being advertised for sale on July 2, 1929. He immediately instituted a proceeding in Chatham superior court to enjoin the sale, but failed in that object, and the sale was consummated. The first proceeding continued pending until the day of the filing of the petition now before us. The petition first filed by the trustee plaintiff, and after its dismissal the present petition, constituted notice of the claim of the plantiff, thus preventing the alienation or encumbrance of the land by Smith to innocent parties against whom the rights of plaintiff could not be asserted. Under the allegations in this petition, which on demurrer must be taken as true, the action taken by the trustee plaintiff would appear to have been more calculated to subserve the interest of the plaintiff as a stockholder in the Realty Investment Co., than would an appeal to the majority stockholders. The capital stock of this corporation consisted of 1500 shares. Of this 530 shares were owned by the plaintiff and 770 shares by W. H. Stillwell, through whose machinations, according to the petition, the security deed had been executed to Smith. There does not appear any good reason why the trustee should have made an appeal to Stillwell, the majority stockholder, in view of his previous conduct as set out in the petition. This would have given Smith an opportunity to dispose of this property and convey to the purchaser a title good as against any judgment the trustee might obtain against Smith in the future. The course pursued by the trustee plaintiff, of having pending in Chatham superior court a proceeding describing the land in question and attacking the validity of the deed executed to Smith by the Realty Investment Co. through

Stillwell as president, appears to fulfil the condition of subsection 5 of § 2224 of the Code, to wit: "'That petitioner has acted promptly; that he has made an earnest effort to obtain redress at the hands of the directors and stockholders, *or why it could not be done, or it was not reasonable to require it.*" The transaction described in the petition, i. e., the execution to Smith of the security deed as therein set out, is certainly "such a fraudulent transaction completed or threatened, among themselves or shareholders or others, as will result in serious injury to the company or other shareholders." § 2224, par. 2.

We do not think the assignment to which reference is made in the 6th ground of the demurrer can be treated as in any sense the basis of the action; and for this reason the court properly overruled this ground of demurrer. The 7th ground of the demurrer is: "'Because it is not shown that the vote of the 530 shares of stock alleged to have been held by the creditors committee of Realty Savings & Trust Company would, if voted, have changed the result of the election of the directors or officers, or any of them, of the Realty Investment Company." The resolutions of the stockholders claimed to have been illegally elected, and of the directors elected by these stockholders, did not authorize the execution by the Realty Investment Co. to Smith of the security deed attacked in this proceeding; consequently the legality or illegality of the election of stockholders and directors is immaterial. The court did not err in not sustaining this ground of demurrer. The cases cited by plaintiff in error (*Jossey* v. *Speer,* 107 *Ga.* 828 (4), 33 S. E. 718, and *Brumby* v. *Marietta,* 132 *Ga.* 408, 411, 64 S. E. 321) are not in point.

Ground 8 of the demurrer is directed to the paragraphs of the petition reciting the facts surrounding the execution by the Realty Investment Co., to the Silk Hope Co., of the deed conveying the equity of the former in its building in Savannah, and the execution by the investment company of the deed to secure debt to L. H. Smith, attacked in the petition. The substance of this ground is that the plaintiff, while ratifying the deal between the two companies, attacks the acts of the officers of the Realty Investment Co. in the remainder of the transaction upon the ground that they were not properly elected and their acts were ultra vires and void; that plaintiff can not accept the fruits of the alleged ultra vires

act of alleged unqualified officers and directors, ratifying the transaction which gives him a benefit, that is, acquiring the Silk Hope tract of land, and in the same suit seek to set aside and declare void the remainder of the same transaction. The plaintiff makes no attempt to have set aside the conveyance from the Realty Investment Company to the Silk Hope Company of its equity in the Realty Building belonging to the former. The Silk Hope Company, by the resolutions of the stockholders and board of directors of the Realty Investment Co., and as innocent purchaser, is protected. But the resolutions referred to authorized only the exchange of properties on certain terms, and did not authorize the payment of $25,000 or any other sum to Smith for negotiating the deal. It is true these resolutions ratified an agreement for the exchange of properties made in September, 1928, and authorized the officers of the company to execute deeds to carry out the exchange, and receive deeds from the Silk Hope Co. according to the terms of the agreement. In the agreement between the Realty Investment Co. and the holders of certain third-mortgage bonds on the Realty Building it is recited that "under a contract entered into between the holders of third mortgage bonds and L. H. Smith, dated September 20, 1928, it was agreed that of the land conveyed to the Realty Investment Company by the Silk Hope Plantation the tract known as the Silk Hope Plantation and subdivision and three small tracts facing on the Louisville Road, the latter totaling approximately 65 acres, were to be conveyed by the Realty Investment Company to L. H. Smith to secure certain money to be advanced by said L. H. Smith," but it contains no reference to any amount to be thus secured as a commission or charge of Smith. It is also true that in the agreement between Smith and the third-mortgage bondholders it is provided: "It is further understood and agreed that, of the lands to be received by the Realty Investment Company from the Silk Hope Company, the tract known as Silk Hope Plantation and Subdivision, and three small tracts facing on the Louisville Road, totaling approximately 65 acres, are to be pledged to L. H. Smith to secure money to be loaned in payment of taxes due by the Realty Investment Company and broker's commission and other expenses in connection with the consummation of the contract between the Realty Investment Company and the Silk Hope Company," but this was not the undertaking or agreement of

the Realty Investment Co., and it is not bound thereby. According to the petition, Smith was fully advised of the resolutions of the stockholders and directors by authority of which the deal with the Silk Hope Co. was made, and knew that these resolutions only authorized that he be secured as to the money he advanced in order for the deal to be consummated, and not as to any amount claimed by him as a commission for making the deal, or as to any amounts due him by Stillwell individually.

The legality or illegality of the stockholders' meeting held on October 12, 1928, and the question whether Stillwell was or was not authorized to vote the 1300 shares of stock at this meeting, are immaterial so far as the security deed executed to Smith is concerned. The resolution of the stockholders did not authorize the execution of this deed to Smith, which, so far as the record discloses, was unauthorized by any authority, but was made at the time 770 of the total of 1500 shares of the stock of the Realty Investment Co. were in the hands of Smith as security for a debt due him by Stillwell, president of the company, and on the same day the security deed was executed, November 3, 1928, was reassigned to Stillwell by Smith; the debt of Stillwell secured by the assignment of 770 shares of stock, as well as other claims due Smith by Stillwell, having been included in the $36,265.06 recited as the consideration of this deed, and the corporation thus assuming his individual debts. It is entirely unnecessary, in view of the object of the present proceeding—the setting aside of the deed to secure debt executed by the Realty Investment Co. to Smith,—to pass upon or consider the resolution passed at the stockholders' meeting of October 12, 1928, as this resolution, conceding it to have been legally passed, gave Stillwell no authority, as president of the Realty Investment Co., to execute the security deed to Smith.

The 10th ground of the demurrer is directed to that part of paragraph 41 of the petition wherein it is alleged: "Also it would not be reasonable to require petitioner to make an effort to obtain redress at the hands of directors and stockholders, as the fraudulent transactions of the corporation were all conducted by W. H. Stillwell and L. H. Smith, who owned the majority of stock in said corporation and who could at all times control the vote of stockholders should the matter be brought to their attention by protest." The demurrer is upon the ground that Smith is alleged to be the

owner of a majority of the stock, when in truth and in fact this paragraph alleges that Smith and Stillwell were the owners, or in the co-operative control, of a majority of the stock. This defect in the special demurrer destroys its efficiency. The ruling upon the 8th ground of demurrer controls the 11th ground, which is directed especially against the 22nd paragraph of the petition. The court did not err in overruling this ground. In the motion for rehearing it is said: "The 12th, 13th, 14th, 15th, and 16th grounds of demurrer are special, and not particularly important." In view of this concession, it would be a useless consumption of time and space to elaborate and particularize wherein the judgment of the trial court overruling the same was not, for the reasons assigned, so erroneous as to warrant a reversal of the judgment.

The 17th ground of the demurrer is directed against the 35th paragraph of the petition. That paragraph is divided into 8 sections, and the ground of demurrer contains 8 reasons why the paragraph should be stricken. The 8th section of both the petition and demurrer, which is denominated by "h," was ruled on in the present case. The court did not overlook the 35th paragraph of the petition or the several grounds of the demurrer; but we were of the opinion then, and are still of the opinion, that though the lower court erred in overruling some of the several grounds of demurrer, the error was not such as to require a reversal of the judgment. Conceding that the property to be sold was sufficiently described, there are other allegations in this paragraph which the plaintiff should be permitted to prove, if he can, as circumstances tending to show whether the conduct of the defendant in the transactions set forth in the petition was fraudulent. Even if the demurrer to the allegations as to what the plaintiff had predicted, etc., should have been sustained, it is hardly conceivable that a jury would be influenced by testimony as to what the plaintiff had predicted. But, out of an abundance of caution, we now direct that upon the trial of the case the evidence should be so restricted as to be confined to proof as to how, and the manner in which, the sale was actually conducted, and the excluding of all reference to predictions that may have been made by the plaintiff or others.

Quoting from the motion for rehearing, we hold "The 18th ground of demurrer is unimportant." For the reason given in our ruling upon the 4th and 5th grounds of demurrer, we are of opinion

that the court did not err in overruling the 19th ground of demurrer, addressed to paragraph 41 of the petition.

The 20th and 21st grounds of demurrer set up the contention that inasmuch as the plaintiff admits an indebtedness of $8,000, which he does not pay or tender, "he can not maintain this equitable case until he either pays or tenders this sum." To support this proposition the plaintiff in error cites *Liles* v. *Bank of Camden County*, 151 *Ga.* 483 (107 S. E. 490), *Montgomery* v. *Atlanta*, 162 *Ga.* 535 (4), 539 (134 S. E. 152, 47 A. L. R. 233), and *Poulk* v. *Cairo Banking Co.*, 158 *Ga.* 338 (3) (123 S. E. 292). These decisions are based upon the well-settled principle that he who would have equity must do equity. However, in our opinion, the facts of each of these three cases differentiate all of them from the case at bar. We have already held that the plaintiff is entitled, under the allegations of the petition, to an accounting. He prays that the deed executed by the Realty Investment Company in favor of L. H. Smith, conveying to him, as security for an alleged debt, the property described in exhibit A, "be declared illegal, null and void, and be abrogated." There is no prayer for a rescission. Under the allegations of the petition this trustee in bankruptcy has made no contract with Smith which can be the subject of a rescission. It is true he stands in the shoes of Realty Savings & Trust Co., which is a minority stockholder in the Realty Investment Co. As such receiver he has received nothing from Smith which he can restore. It is argued that as trustee he can not claim the benefits of what the Realty Investment Co. received from the Silk Hope Co., without liability for the real-estate commissions due to Smith and which are admitted to be as much as $8,000. It is insisted that the plaintiff must pay or tender this sum before the doors of a court of equity are open to him. It is true this is the general rule; but there are many exceptions, which are stated in the authorities, where equity will extend relief where in the circumstances of the case payment or tender is either impracticable or impossible. No rescission is asked in this case, but even in a case of rescission the exceptions to which we have referred prevail. In *Timmerman* v. *Stanley*, 123 *Ga.* 850, 854 (51 S. E. 760, 1 L. R. A. (N. S.) 379), the plaintiff alleged that the defendant refused to pay back to him the $64 paid for the scholarships, and he prayed for a judgment of the specific sum, not as damages, or as a part of his damages, or as

throwing any light on the amount of damages, but as a return of the purchase-money. Mr. Justice Lumpkin, delivering the opinion of the court, said: "'Taking the pleadings most strongly against the pleader, the statement that the defendant refuses to pay back the amount to him implied that a demand had been made. We are of the opinion, therefore, that this part of the declaration treats the contract as at an end, and seeks to recover the amount paid by the plaintiff to' the defendant under it. Such being the case, the particular portion of the declaration which sues for the recovery of such amount is not subject to demurrer on the ground urged. It is contended in the brief of counsel for the defendant in error, that there can be no recovery of the amount paid, because in order to rescind the contract the plaintiff must restore the status, and must tender back to the defendant what he has received from him, and that this can not be done in the present case. Civil Code [1895], § 3712 [1910, § 4306]. This is a general rule where one party to the contract has received goods, money, or other thing of value, which is capable of being returned to the other party. But in a contract like that involved in the present case, where a person agrees to teach another a certain thing, or to qualify him for a certain position, if he gives the student some instruction and then refuses to complete his contract, there would be no possible way by which said instruction as he had given could be returned or tendered back to him; nor is the other party required to estimate value for what has been done and tender such amount. He can not hold on to the amount paid, refuse to proceed with the contract, and defend against an action to recover the price paid, on the ground that the plaintiff had not tendered back to him his instruction, and could not restore him to the status quo. He can not by his own conduct place himself in a situation where restoration is impossible, repudiate the contract, and set up this situation as a defense to a suit for the amount paid. If he abandons the contract, he should not complain that the other party is willing to treat it as rescinded. The code section has no application in such a case."

In *Henderson Warehouse Co. v. Brand,* 105 *Ga.* 224 (31 S. E. 551), the lower court refused to charge that before the plaintiff could recover or go back of a settlement which had been made between the parties, he would have to tender to the defendants the money that defendants had paid out, based on that settlement, and

place them in the position they were prior to the settlement. This court ruled: "We find no error in the refusal of the court to give the charge as requested. It is not questioned in this case that the defendant in error had a large sum of money coming to him from the sale of his cotton, in excess of the charges of the warehouse company for storage, insurance, etc. Hence it was not a right that the warehouse company had, after a sale of the cotton, to retain, under any circumstances, so much of the proceeds as exceeded the amount of their charge; and if the defendant in error should be required to turn over to the warehouse company all the money he received, he would be turning over his own money, to which the warehouse company had no claim. It was not necessary for the maintenance of the present action that the plaintiff should rescind or offer to rescind the settlement made with the warehouse company, and tender back the money he had actually received in the settlement. . . By the Civil Code, § 3712, it is provided that, in order for a party to rescind, without the consent of the opposite party, for non-performance by him of his covenants, both parties must be restored to the condition in which they were before the contract was made. The doctrine of rescission is based upon restitution, and it is only applicable generally where restitution can or ought to be made." Under the facts and circumstances stated in the petition in this case, the lower court was authorized to adjudge that restitution of Smith's services as a real-estate agent could not be made, for the reasons stated in the *Stanley* case, and that in the circumstances and in view of the peculiar fiduciary relationship of the plaintiff to the bankrupt, and the fact that it was impossible for him to procure the $8,000 for the purpose of payment or tender, the settlement of this admitted demand could in equity well be postponed to await the event as to the issues of fraud against which the plaintiff was seeking the relief of the court of chancery. In *Fletcher* v. *Fletcher*, 158 *Ga.* 900 (6) (124 S. E. 722), Mr. Justice Hines, delivering the opinion of the court, said: "An accounting between the parties being necessary to fix the amount of the secured debt, no formal tender of the actual amount of the secured debt which may be due the defendant and grantee in the security deed was necessary; and it was sufficient for the plaintiff in his petition to offer to pay whatever amount might be found to be due to the defendant, Fletcher, upon an accounting."

The petitioner in this case likewise offers to pay whatever the court may find to be due Smith for his services or commissions as a real-estate agent. See also *Wynne* v. *Fisher,* 156 *Ga.* 656 (2) (119 S. E. 605).

That there are exceptions to the general rule which require one rescinding a contract to return the consideration received by him, is well recognized by other jurisdictions in this country. "One rescinding contract is not required to return consideration, when to do so would be unreasonable or impossible." Wilks *v.* Mc-Govern-Place Oil Co., 189 Wis. 420 (5) (207 N. W. 692). In Arthur *v.* Graham, 64 Cal. App. 609 (222 Pac. 371), it was held: that a trust deed on property parted with by vendor under an agreement sought to be rescinded was paid by vendee, and a mortgage executed for a lesser sum on different terms and conditions, thereby rendering exact reproduction of the status quo impossible, will not preclude rescission for vendor's fraud, where it is possible to do substantial justice by adjusting the equities between the parties. It was held in Clark *v.* Wells, 127 Minn. 353 (149 N. W. 547, L. R. A. 1916F, 476): "The party guilty of the fraud is not entitled to anything more than substantial justice, and a fair opportunity to receive what he parted with. If, through the fault of the wrong-doer, the party defrauded is unable to return all the property received in the condition in which he received it, it is sufficient if he restore the property so far as he is able, and secure to the wrong-doer the equivalent of what can not be returned." In Thackrah *v.* Haas, 119 U. S. 499 (7 Sup. Ct. 311, 30 L. ed. 486), it was held that a transfer of shares of stock in a corporation, procured from the owner while so intoxicated as to be incapable of transacting business, and for a grossly inadequate consideration, will be set aside in equity; and if, without fault of his, he is unable to restore the consideration, provision for its repayment may be made in the final decree. In Neblett *v.* Macfarland, 92 U. S. 101, 105 (23 L. ed. 471), it was said: "Parties engaged in a fraudulent attempt to obtain a neighbor's property are not the objects of the special solicitude of the courts. If they are caught in their own toils, it is a legitimate consequence of their violation of the rules of law and morality. Those who violate these laws must suffer the penalty." It was ruled: "Where a conveyance of a plantation had been obtained by fraud, and the only consideration alleged by

the grantee was the cancellation of a certain bond executed by the grantor, and the court below set aside the deed, and ordered that the bond, unaffected by any indorsement of credit or payment thereon, should be returned, and that it and the mortgage therewith given should have the same force and effect as if the conveyance had not been made and the bond had not been canceled,—*Held*, that the decree was proper in not making the payment of the bond a condition precedent to the reconveyance of the plantation."

In *Berry* v. *Williams*, 141 *Ga.* 642 (81 S. E. 881), it was held: "If the first grantee absents himself so that a tender can not be made to him, a suit of the character mentioned in the preceding note may be maintained without a tender to the creditor in person, if the plaintiff offers to pay the money into court for him." In Hirschman *v.* Healy, 162 Minn. 328 (202 N. W. 734), the Supreme Court of Minnesota held: "It was error to dismiss the counterclaim for rescission. In rescission by the court for misrepresentations regarding the subject-matter of a contract, it is not indispensable that pecuniary damages be shown. It is enough that the party did not receive substantially that which it was represented he would get. . . Nor does the impossibility of restoring the wrong-doer to statu quo necessarily prevent the court from granting rescission to the one wronged. It is sufficient if the latter makes such restitution as may be just and within his power. . . The other reason given for dismissal of the counter-claim was the impossibility of now placing the plaintiff in statu quo. But a court of equity should give more consideration to restoring the victim of the misrepresentations than the author thereof to statu quo. 'The fundamental theory upon which equity acts is that of restoration—of restoring the defrauded party primarily, and the fraudulent party as a necessary incident, to the position occupied before the fraud was committed.' 2 Pomeroy's Equity Jurisprudence, § 910. In Masson *v.* Bovet, 1 Denio, 69, 43 Am. D. 651, a case often cited with approval, the court speaking of restoration says: 'This is not exacted on account of any feeling of partiality or regard for the fraudulent party. The law cares very little what his loss may be, and exacts nothing for his sake. If, therefore, he has so entangled himself in his own knavish plot that the party defrauded can not unloose him, the fault is his own, and the law only requires the injured party to restore what he has received, and,

as far as he can, undo what has been done in the execution of the contract. This is all the party defrauded can do, and all that honesty and fair dealing require of him. If these fail to extricate the wrong-doer from the position he has assumed in the execution of the contract, it is in no sense the fault of his intended victim, and upon the principles of eternal justice whatever consequences may follow rest on the head of the offender alone.' See also, as to the question of exact status quo, Clark v. Wells, 127 Minn. 353, 149 N. W. 547, L. R. A. 1916F, 476; Neblett v. Macfarland, 92 U. S. 101, 23 L. ed. 471; Freeman v. Reagan, 26 Ark. 373; Brown v. Norman, 65 Miss. 369, 4 So. 293, 7 Am. St. Rep. 663; Ring v. Ring, 55 Misc. 420, 105 N. Y. S. 498 (affirmed 199 N. Y. 574, 93 N. E. 1130). And so in Rase v. Minneapolis, St. P. & S. Ste. M. Ry. Co., 118 Minn. 437, 137 N. W. 176, a party who by fraud had been induced to settle a cause of action was permitted to maintain the action, although he had spent some of the money obtained in the settlement and was unable to restore it."

*Rehearing denied.*